NANNIE BUXLY v. J. C. BUXTON, Adm'r.

*Bond—Consideration—Judge's Charge—Code, Section 413— Weight of Evidence—Seal.*

1. The execution of the bond sued on being denied by the defendant administrator, he introduced evidence of conflicting declarations made by the plaintiff to him when the bond was presented for payment, as to the sources from which she obtained the money which was the consideration of the bond. Plaintiff failed to introduce evidence to corroborate either of these declarations, or to show from what source the money was procured by her; *Held,* that this furnished no presumption in favor of the defendant that his intestate had never executed the bond. It was only a circumstance to be considered by the jury with the other evidence in the case.

2. *Held further,* that it was not error for the Judge to remind the jury—such being the fact—that there was no evidence before them that the parties who might be called as witnesses, to corroborate the declarations of the plaintiff, were alive at the time of the trial.

3. It is not a violation of the Act of 1796, (*The Code,* sec. 413), for the Judge to tell the jury that the evidence that the intestate had seen the bond, and admitted that the had executed it, if believed by the jury to be true, is entitled to more weight than the opinions of experts as to the genuineness of the signature, and that such opinions should be received with caution.

4. A seal imports, or rather dispenses with proof of consideration, except when equitable relief is sought.

(*Pope* v. *Askew,* 1 Ired., 16 ; *State* v. *Ellington,* 7 Ired., 61 ; *State* v. *Nash,* 8 Ired., 35 ; *State* v. *Nat,* 6 Jones, 114 ; *Wiseman* v. *Cornish,* 8 Jones, 218 ; *State* v. *Haney,* 2 Dev. & Bat., 390 ; *State* v. *Hardin, Ibid,* 407, cited and approved).

CIVIL ACTION tried before *Gilmer, Judge,* and a jury, at Spring Term, 1884, of DAVIDSON Superior Court.

The facts appear in the opinion.

There was a verdict and judgment for the plaintiff, and the defendant appealed.

No counsel for the plaintiff.

*Messrs. Watson & Glenn* and *Reade, Busbee & Busbee,* for the defendant.

SMITH, C. J.   The action is upon a note under seal, for the payment of money, alleged in the complaint to have been executed by the intestate of the defendant, and denied in the answer of the latter.   The pleadings are both verified, and the only issue submitted to the jury was, "Is the bond sued on the act and deed of J. N. Shelton, the defendant's intestate?"   To which the response was in the affirmative.

Upon the trial, the plaintiff introduced evidence tending to show the signature to the note to be in the hand-writing of the intestate, in the opinion of the witnesses, while other witnesses testified that the intestate admitted his execution of the instrument, and said that he would pay it.   The defendant introduced a large number of witnesses who swore that they were well acquainted with the intestate's signature, and that, in their opinion, that on the note was spurious and not his.

The defendant, examined on his own behalf, testiffed to two conversations with the plaintiff, one of which took place when the note was presented to him for payment, some eight months after the intestate's death, and the other some two or three months later, when the note was a second time presented and payment demanded.   In the first conversation the defendant denied that the signature was that of his intestate, and that the plaintiff in answer to an inquiry where she got the money for which the note was given, said that she made it by sewing for the girls at the Greensboro college.   In reply to a similar inquiry at the next presentation of the note, the plaintiff stated that it was sent to her by her uncle from the west, in a registered letter.

The plaintiff was in court and heard this testimony, but was not examined, nor did she offer any evidence to show the source from which she obtained the money constituting the consideration of the note.

There was evidence that the plaintiff had always resided in the county, and both *pro* and *con* as to her needy circumstances.

In the argument of defendant's counsel he insisted that the plaintiff had the power of proving by her uncle's deposition, if

such was the fact, that the money was furnished by him to her, and could have summoned the postmaster to prove his delivery of a registered letter, and that she having failed to make this proof when the answer denied the genuineness of the note, it was to be presumed that the denial was true, and this circumstance was to be weighed by the jury against her.

The Court charged the jury that there was no presumption of law to be argued against the plaintiff's statements of the source from which the money was derived, and that they were false, because she had not produced her uncle or the postmaster; that this was a circumstance, and it did not appear that either was living, or who or where they were. To this instruction the defendant excepted.

Besides other instructions, to which no exception was taken, the Court charged further: "The evidence of the intestate's admission when viewing the instrument, that it was the note he gave to the plaintiff, if accepted by the jury as true, is entitled to greater weight than the expression of opinion by witnesses or experts as to the genuineness or falsity of the handwriting. An opinion as to a man's handwriting ought to be received by the jury with caution." To these directions exceptions were also taken.

The verdict being returned and judgment rendered for the plaintiff, the defendant appealed.

The exceptions appearing in the record are confined to the charge addressed to the jury, and not upon assigned errors in law in the rulings, and a supposed disregard of the act of 1796, which forbids the Judge to express "an opinion whether a fact is fully or sufficiently proven." *The Code,* §413.

(1.) There was no error committed in telling the jury, that the failure to produce the evidence of the postmaster and the plaintiff's uncle, to corroborate her last account of the manner in which she came in possession of the money loaned, raised a presumption against the truth of her statement, was not a correct proposition in law, and that the omission was but a circumstance to be

31

considered with other proofs offered, in arriving at a conclusion as to the truth or falsehood of her declaration. Nor was it wrong to remind them of the absence of evidence that the witnesses were living, or who, or where they were. There is no such rule of law to be declared to the jury, and the corroborative evidence has but a remote, if any, bearing upon the issue as to the execution of the note by the intestate. Whether the money was obtained from the one or the other source, or whether any money was loaned to form the consideration of the former, has at most but a slight tendency towards proving the fabrication of the instrument sued on. Being under seal, it imports or rather dispenses with proof of a consideration, unless when some equitable relief is sought.

The plaintiff was not herself examined, and hence no discrediting effect upon her evidence is imparted by the alleged false statement. The significance allowed to this omission, in leaving it for the consideration of the jury, furnishes no cause of complaint to the defendant and he could not ask more.

Nor can there be error in saying there was no evidence of a fact, when there was none, that constitutes an important element among those from which the unfavorable presumption is proposed to be deduced.

(2.) The exception to the instruction that an opinion as to one's hand-writing ought to be received with caution, and that direct evidence that the intestate, when he saw the note, admitted its execution and his liability to pay it, if accepted as true, was entitled to greater weight than such opinions when expressed, is equally untenable.

This is not a case of recognition of a person or thing seen and remembered, but of an exemplar or ideal, impressed upon the mind to which the disputed hand-writing is compared, and from its conformity to which as a standard is inferred its genuineness or falsity. The identity of the hand-writing, as proceeding from one and the same source is thus determined in the opinion of the witness, and this opinion becomes evidence to aid the jury in com-

ing to a conclusion as to the controverted fact. It is, therefore, obvious upon general reason and founded upon common experience, that opinions thus formed are more uncertain, and should be more carefully considered and acted upon than positive testimony from a credible witness, who saw and knows the fact of the execution of the note, or which is of equivalent force, the direct admission of the maker or obligor. There could, therefore, be no harm in making the observation in regard to these classes of evidence and their relation to the controversy, in accordance with which the jury ought to act, and, it may be assumed, would act in the absence of the suggestion.

The reference to the treatises of *Taylor* and *Wharton* on the law of evidence only show that the opinions of experts or those who have acquired knowledge of a particular individual's handwriting, and are allowed to testify, as held in *Pope* v. *Askew*, 1 Ired., 16, are primary or original evidence, and as such to be regarded by the jury. But the value of the opinions, as proof of the matter about which they are formed, must be left to the jury to estimate. Their force and effect are not dependent, as is direct and positive testimony, upon the means of knowledge and the credibility of the witnesses alone, but upon the correctness of their deductions from an examination of the writing. In thus being subjected to further contingencies, opinions, however honestly entertained, furnish less reliable basis for reaching a correct result, than direct testimony to the fact, derived from equally credible witnesses who have personal knowledge. An apt illustration is supplied in the present case. Witnesses for the plaintiff express opinions that the signature is genuine, while a large number for the defendant say that it is spurious. These are discrepant conclusions, reached by persons who have examined the writing, and may be honestly entertained without imputing falsehood to either class, and they show the propriety and fitness of the suggestion of caution in accepting it as a proof of the ultimate fact, and its greater uncertainty in comparison with the other form of evidence. There are cases in our reports affording support by analogy to the remark contained in the charge.

In *State* v. *Ellington*, 7 Ired., 61, where the mother and sister testified on behalf of the prisoner, and the charge was "that it was the province of the jury to say whether the witnesses have testified truly, notwithstanding their relation to the prisoner, or had yielded to that human infirmity to which we are all liable, and had testified falsely in favor of their son and brother," Ruffin, C. J., said, "Nor was there error in telling the jury that their (the witnesses) relation to the prisoner *affected their credit*. That is a proposition of law and reason."

So in *State* v. *Nash*, 8 Ired., 35, the charge that "the law regarded with suspicion the testimony of near relations when testifying for each other," was sustained.

The same observation in reference to the testimony of fellow-servants of the accused was upheld as free from objection in *State* v. *Nat*, 6 Jones, 114.

In *Wiseman* v. *Cornish*, 8 Jones, 218, where the refusal to so charge was assigned for error, the late Chief Justice said: "There being no rule of law in regard to the matter, it must be left to the discretion of the Judge."

The same rule is acted on in regard to the credit to which the evidence of an accomplice is entitled.

In *Rex* v. *Jones*, 2 Campbell, 132, Lord Ellenborough remarked : "Judges in their discretion will advise a jury not to believe an accomplice unless he is confirmed, or only so far as he is confirmed, but if he is believed, his testimony is unquestionably sufficient to establish the facts he deposes."

Quoting these words in *State* v. *Haney*, 2 D. & B., 390, Gaston, J., adds: "We are not aware of any judicial decision in our country at variance with the rule brought hither by our ancestors."

In *State* v. *Hardin*, *Ibid.*, 407, Ruffin, C. J., in reference to such evidence uses this language: "It is, however, dangerous to act exclusively on such evidence, and, therefore, the Court *may properly caution the jury* and point out the grounds for requiring evidence confirmatory of some substantial parts of it."

These are sufficient to show that observations of the kind under review, are not obnoxious to the objection that they are unauthorized by law, and may be made in aid of the jury in arriving at their verdict.

The appellant's chief objection to these expressions of the Judge is, that they intimate an opinion upon the facts, and invade the province of the jury.

We look in vain for any proof of the imputed intimation. The opinions of experts come from both parties, and what was said is alike applicable to them all. The suggestion of the want of evidence that certain witnesses were alive and their testimony could have been obtained, was certainly not improper when deductions are to be drawn from a mere omission to produce the testimony. The absence of this proof is a fact in the case which ought not to be over looked in qualifying the general proposition, nor was there error in calling attention to it.

The trial throughout seems to have been conducted with entire impartiality and fairness, with no indication of an opinion whether any part is or is not "fully or sufficiently proven," or of any leaning or bias for or against either party. The jury having rendered their verdict, we see no cause for setting it aside, and the judgment must be affirmed.

No error.                                        Affirmed.