STATE OF MISSOURI, Respondent, v. RICHARD MOSBY, Appellant.

Kansas City Court of Appeals, April 17, 1893.

1. **Criminal Procedure:** EVIDENCE AS TO TIME OF OFFENSE. The indictment charged that the keeping of common gaming house from January to March. *Held,* the evidence might show any time within a year.

2. **Evidence:** GAMING HOUSE: CHARACTER OF FREQUENTERS. Under an indictment for keeping a common gaming house, the general reputation of the frequenters of the house is admissible. Authorities discussed.

3. ———: ———: GENERAL REPUTATION OF DEFENDANT. Under such indictment, the general reputation of the defendant as a gambler is admissible.

4. **Criminal Law:** GAMING HOUSE. A common gaming house may consist of a single room rented in a house of many rooms, and it need not necessarily be open to the whole public in common, nor the gaming be visible from the exterior, nor need gaming be the only business for which it is used, nor need it be constantly kept for that purpose; and it may be kept without charge, or as a business, and may be also used as a sleeping room.

5. ———: ———: WHAT NOT. Occasional games of poker privately played with acquaintances for money in his room does not make him a keeper of a common gaming house.

6. ———: ———: GAMBLING. A conviction for gambling is no bar to a conviction for keeping a common gaming house.

*Appeal from the LaFayette Circuit Court.*—HON. JOHN E. RYLAND, Judge.

AFFIRMED.

*John S. Blackwell,* for appellant.

(1) The court erred in not confining the evidence as to acts of gambling to the time and within the dates specifically alleged in the indictment. 1 Bishop on Criminal Procedure [3 Ed.] secs. 401–7, 485, 486, 487, 488, 488a, 488b, and cases cited from these sections; *State v. Owen,* 73 Mo. 440; *State v. Smith,* 31 Mo. 120; 1 Greenleaf on Evidence [Redfield's Ed.] sec. 63, and note 2, also sec. 65; Wharton's Criminal Evidence [8 Ed.] sec. 146, and note 6. (2) The court committed error in admitting evidence as to the general, especial and personal reputations of parties who visited the room of defendant; Wharton's Criminal Evidence [8 Ed.] sec. 260; Wharton's Criminal Law [8 Ed.] secs. 1410, 1430, 1451; *Commonwealth v. Hopkins,* 2 Dana, 418; Bishop on Statutory Crimes [2 Ed.] sec. 879, pp. 509, 510; *Bowe v. State,* 25 Ind. 415; *Howard v. State,* 64 Ind. 516; *State v. Martin,* 74 Mo. 547; *Anderson v. State,* 12 S. W. Rep. (Tex.) 868, and special attention of court is called thereto; *Parks v. State,* 12 S. W. Rep. 869; *State v. Brunell,* 29 Wis. 435; *State v. Boardman,* 64 Me. 543. (3) The court erred in admitting evidence, against the objections of defendant and to his prejudice, as to the general reputation of defendant. Kelley on Criminal Law, secs. 252, p. 160; *State v. Creson,* 38 Mo. 372; *State v. Reavis,* 71 Mo. 420; *State v. Hart,* 66 Mo. 208; *State v. Martin,* 74 Mo. 547; Wharton on Criminal Pleadings and Evidence [6 Ed.] pp. 635, 636, 647, 648; *State v. Palmer,* 88 Mo. 568; *State v. Berry,* 24 Mo. App. 466; 3 Greenleaf on Evidence, sec. 25; Bull N. P. 296; *Commonwealth v. Webster,* 5 Cush. 325; *People v. White,* 14 Wend. 111; *Anderson v. State,* 12 S. W. Rep. 868; *Parks v. State, supra.* Court's attention is specially called to last two cases. *State v. Crow,* 107 Mo. 341,

345, 346. The court committed error in refusing to give instructions asked on behalf of the defendant. *Burdine v. State*, 25 Ala. 61; *Clarke v. State*, 12 Ala. 492; *Roguemore v. State*, 19 Ala. 528; *Coleman v. State*, 20 Ala. 51. 1 Thompson on Trials, sec. 2494; *Castle. v. State*, 75 Ind. 147; *State v. Witt*, 42 Ind. 420; *State v. Young*, 105 Mo. 634, 640.

*William Aull*, for respondent.

(1) A common gaming house is a place where gaming is commonly *or frequently* carried on. Kelley on Criminal Law and Practice, p. 661, sec. 955; Bishop on Statutory Crimes [2 Ed.], sec. 876; 1 Revised Statutes 1889, sec. 3816; *Armstrong v. State*, 4 Blackf. (Ind.) 247; *State v. Haines*, 30 Me. 65; *State v. Currier*, 23 Me. 43; *State v. Layman*, 5 Harring [Ed.] 510; 1 Bishop on Criminal Law [7 Ed.] sec. 1135, and cases cited; *Smith v. State*, 52 Ala. 384; *Huffman v. State*, 30 Ala. 532; *People v. ·Weithoff*, 51 Mich. 203; Stephens on Criminal Law, art. 182; *People v. Cutler*, 28 Hun (N. Y.), 465; 8 American and English Encyclopedia of Law, pp. 1065–73. (2) Every person who shall appear or act as master or who has the care, use or management of such house, is deemed the "keeper" thereof. 1 Revised Statutes, 1889, sec. 3817–3811; Kelley on Criminal Law and Practice, sec. 955, p. 661; *State v. Bentz*, 11 Mo. 27; *State v. Ebert*, 40 Mo. 186; *State v. Barnard*, 64 Mo. 260; *State v. Bean*, 21 Mo. 267; *State v. Clementine*, 14 Mo. 112; Bishop on Criminal Practice, sec. 118, and cases cited. It is immaterial whether defendant is owner of the building or not. Bishop on Criminal Law [7 Ed.], sec. 1137; *State v. Haines*, 30 Me. 65; *State v. Currier*, 23 Me. 43; *State v. Layman*, 5 Harring (Del.), 510. (3) That it is resorted to by gamblers may be shown

as well as reputation of visitors. *State v. Barnard,* 64 Mo. 260; *Commonwealth v. Gambling Implements,* 141 Mass. 114; Malone on Criminal Briefs, p. 342–3; *Sylvester v. State,* 42 Tex. 496; *Harwood v. People,* 26 N. Y. 190; *Sparks v. State,* 59 Ind. 82, 64 Me. 543; *Territory v. Chartrand,* 1 Dak. 379; Bishop on Criminal Practice, sec. 112–116; *Commonwealth v. Cordage,* 119 Mass. 210; *McCain v. State,* 57 Ga. 390; *United States v. Stephens,* 4 Cranch, C. C. 341; *State v. Hand,* 7 Iowa, 411; *State v. Lyon,* 39 Iowa, 379; *State v. Boardman,* 64 Me. 523; *State v. Bronnell,* 29 Wis. 435; *O'Brien v. People,* 28 Mich. 213; 1 Bishop on Criminal Practice, sec. 1081–1117; 1 Greenleaf on Evidence, sec. 55; *Clementine v. State, supra; Commonwealth v. Kimball,* 7 Gray, 328; *Commonwealth v. Gannett,* 1 Allen, 7; *State v. McDowell Dudley,* 1 Allen, 346–9; 41 N. H. 407; 1 Allen, 7. (4) It was not necessary that the room in question be open to the public in common. *Lockhart v. State,* 10 Tex. 275; *Rice v. State,* 10 Tex. 545; 17 Pick. (Mass.) 80; 18 Vermont, 70; 2 Gray, 356; 1 Bishop on Criminal Law, sec. 1038. (5) The state was not required to prove that gambling was the only business carried on there. Authorities *supra* "1." (6) It was not necessary to a conviction that the state should show that the room was constantly kept for gaming purposes. Authorities *supra* "1." *State v. Crogan,* 8 Iowa, 523. (7) It was not necessary for the state to show that the entire building was so used, a single room was sufficient. Stephens on Criminal Law, art. 182; *Commonwealth v. Hyde Thach,* C. C. Mass. 19; ·*People v. Weithoff, supra.* (8) It was not necessary that the room be open and visible from the exterior. *Pacetti v. State,* 7 S. E. Rep. (Ga.) 867; *Armstrong v. State,* 4. Blackf. (Ind.) 247; *Huffman v. State,* 30 Ala. 532; *Smith v. State,* 52 Ala. 384; *Shihagan v. State,* 9 Tex. 430; *Parker v. State,* 26 Tex. 204. (9) As to

definition of word "Gaming," see 8 American and English Encyclopedia of Law, p. 1033–4, and notes; also, Anderson's Law Dictionery, p. 484, and cases cited; Rapalje & Lawrence's Law Dictionery, p. 561, and cases cited.

ELLISON, J.—Defendant was indicted and convicted, under section 3811, Revised Statutes, 1889, for setting up and keeping a common gaming house. Since the jury has found him guilty, we are justified in assuming that portion of the testimony tending to show him guilty as the facts of the case. From this evidence it appears that he rented a room in the second story of a building which he used as a bed room. That he had in it a double bed, a washstand, some chairs and a round table with a center square support, in which was a box six or eight inches square with a door in the box just below the top of the table, and "a spot cut in the table cover opening into the box." It was shown that various persons frequented this room in both day and night and gambled there; that two "raids" were made on the room by officers, this defendant and several others being caught gambling with cards, while others on one occasion were caught "shooting craps." The throwing of dice and of cards and calling for cards and changing of money was overheard by persons in the hall way. One witness stated that "the one who set handiest to the door opened it to anyone who came, to anybody that knocked; they darkened all the windows and doors; it was going on day as well as night." On the occasions referred to the defendant and others were arrested and convicted of gambling, defendant pleading guilty. The general reputation of many of those who freqented this room including defendant was shown to be that of gamblers. On the occasion of one of the raids a woman was in the bed which was in the room,

We will now notice the objections upon which defendant seeks to reverse his conviction. The indictment charges that the house was kept from the second of January, 1891, to the ninth of March, 1891; while the court, over defendant's objection, ruled that a showing might be made by the state at any time within a year prior to finding the indictment. This we think was not error. If the allegation had been of a single date or several dates, there would be no question that the state would not be held, in this class of cases, to the dates alleged. There ought not to be any difference between such an allegation and one like the present where the charge puts the misdemeanor *between* certain dates.

It is complained that the court should not have permitted the state to show the general reputation of those who frequented the room as being gamblers. We think that this was permissible. There were two essential things to prove in order to justify a conviction under this indictment, viz.: That the house (room) was a gaming house, and that it was kept by defendant. Now proof showing the reputation of those who frequented a house or habitually resorted to it is a very persuasive portion of evidence tending to establish the character of the house, especially when it is supplemented with evidence of actual gaming in the house. The most frequent occasion for such proof and consequently the most frequently asserted in the books is in relation to bawdy houses, and counsel asserts that while the rule is applicable to bawdy or disorderly houses it is not as to a gambling house. We think the authorities he cites fail to bear out his proposition. Section 260 of Wharton's Criminal Evidence does not do so. The general reputation there spoken of is the reputation of the *house*. The effect of the author's words is that you cannot prove that a house is a disor-

derly 'or gaming house merely by proving that such is *its* reputation. Nor can you, as stated by the author, on an indictment for being a common gambler, show the defendant is by reputation a common gambler. "His acts, not his character, are to be shown," citing *Commonwealth v. Hopkins*, 2 Dana, 418. That statement of the law is not involved here. The effort here was not to show what was the *repute* of this defendant's room, but what was the repute of those who attended or frequented that room. The character of the acts committed connected with the character of the parties committing the acts tended to fix the character of the room. We are also particularly cited to *Anderson v. State*, 12 S. W. Rep. (Tex.) 868. We interpret that case against defendant on this point. The court said in that case that: "The fact that Bullard was a gambler would not of itself make any house in which he played cards a gambling house. *Of course, if gamblers were in the habit of playing at a house, this would be legitimate, as tending to show the character of the house as a gambling house.*" The italics are ours. We rule the point against defendant.

The next position taken against the action of the trial court is admitting evidence of the general reputation of the *defendant* as a gambler. A correct decision of this question is not easily made. In *State v. Brunnell*, 29 Wis. 435, on an indictment for keeping "a house of ill fame, resorted to for the purpose of prostitution or lewdness," it was held that the general reputation of the defendant was admissible, while in *State v. Douglass*, 7 Iowa, 411, such testimony was held not admissible. As this sort of testimony is allowed for the purpose of establishing the character of the house, and as the rule is clear that that may be made out, in part at least, by the character of those who

frequent it, we have concluded that the testimony was, for this purpose, properly heard. And in this respect and to this extent the decision we announce is an exception to the well-recognized rule that the defendant's character cannot be attacked unless he first invites it.

The action of the court on the instructions was substantially correct. Those for the state declared that a gaming house, as meant by the statute, could consist of a single room rented in a house of many rooms, that the room need not necessarily be open to the whole public in common or that the gaming therein be visible from the exterior, that it is not necessary for the state to show that gambling was the only business for which the room was used, or that the room was constantly kept for that purpose.

The first instruction refused for the defendant embodied the declaration that the state could not go outside of the time alleged in the indictment. This we have disposed of already. The second refused declared that unless defendant carried on, or permitted to be carried on, in said room gaming as a business he should be found not guilty. This was properly refused, since a gaming house may be kept without charge. The first paragraph of the third refused instruction is a good statement of the law. It is therein declared in effect that occasional games of poker privately played with acquaintances for money in the room occupied by defendant would not make defendant a keeper of a common gaming house as stated in the statute. The difficulty with the instruction lies with what follows the foregoing. It is followed up by stating that, if the room was rented and used as a sleeping room, and not for the purpose of carrying on gambling as a business, defendant was not guilty. Now, as before stated, one may be guilty of keeping a

common gambling house without carrying on gambling as a business. And so he may rent a room for a sleeping room and yet he may set up a "gambling house" therein.

The fourth instruction refused declares that, as defendant was convicted of gambling on the nineteenth of January, 1891, the present prosecution should abate. This will not do. A conviction for gambling is no bar to a conviction for keeping a common gaming house. One may gamble and not keep the house, or keep the house and not gamble. The fifth refused was as to reasonable doubt, a subject already properly disposed of in instructions for the state.

The following extracts taken from an opinion by the supreme court of Alabama in *Smith v. State*, 52 Ala. 384, will cover in quite a satisfactory way most of the declarations given for the state in the case at bar: "The evil the statute proposed to suppress was gambling with cards, dice or any device or substitute for either, under such circumstances as would tend to offend public morals, and to the temptation of the young and unwary into its corrupting practices. The construction given these terms must be such as will subserve the legislative intent. Any house to which all who may wish can go, night or day, and indulge in gaming in its various forms, is a public place within the meaning of the statute. That its proprietor uses it as a bed room as well as a gaming room, and that entrance can be gained only by knocking at the door, when it was opened from the inside, does not relieve it from the character of a public place. That character is stamped upon it, when one of the uses to which it is appropriated is gaming, and it is free of access to all who are known to engage in it. All such persons are invited to it by the use to which it is appropriated. It is not necessary the door should have been thrown

open, and all persons indiscriminately, or, in the words of the bill of exceptions, the 'general public' allowed to enter at pleasure.   The greater the air of privacy and secrecy which can be given to the place, the more effectual is the lure; and the place when frequented for the purposes of gaming is within the evil the statute proposes suppressing.   It is common to all who would gratify the passion gaming engenders and stimulates, and this is publicity."   *   *   *   See also *Huffman v. State*, 30 Ala. 532; *Pacetti v. State*, 82 Ga. 297.

There were several other objections urged by defendant, among them is a complaint of the conduct of the trial judge in a remark made as to one of the officers, who was a witness during the hearing of his testimony, but we have concluded after a consideration of each of them that they did not prejudice defendant in the trial.

The judgment will therefore be affirmed.   All concur.