61   97
64  581

SUSAN E. NEUDECK *et al.*, Respondent, v. GRAND LODGE
AMERICAN ORDER OF UNITED WORKMEN OF
MISSOURI, Appellant.

Kansas City Court of Appeals, February 4, 1895.

1. Benefit Societies: DEATH NOTICE: EVIDENCE. If a benefit society
has a prescribed form for giving notice of the death of a member, then
such prescribed form should be used and would be the best and pri-
mary evidence, and secondary evidence would only be admisible upon
proper foundation layed therefor.

2. ———: ———: PHYSICIAN'S REPORT: EVIDENCE. The report of a
physician accompanying a death notice in which he expressed an
opinion as to the cause of the death can not bind the beneficiary in
any material issue and is not evidence.

3. Appellate Practice: EXCEPTION. The appellate court will not
review the action of the trial court in excluding evidence where no
exception is saved.

4. Benefit Societies: EVIDENCE: COMMITTEE REPORT. The exclusion
from a jury of the report of a grievance committee of a benefit soci-
ety in regard to the conduct of the deceased in becoming intoxicated,
is harmless where the parol evidence showed all the transactions
contained in the report.

5. ———: ———: GENERAL REPUTATION. General reputation as to
ownership, etc., is considered original evidence and not hearsay
and in an action on a benefit certificate of a benefit society the general
reputation of the deceased in relation to the use of liquors is admissi-
ble when there is proof of acts tending to show his intemperance.

6. ———: ———:• EXPERT WITNESS. Certain questions propounded to
experts calling for an opinion of the cause of death were properly
excluded since they were based on controverted facts and not upon
admitted facts or hypothetical questions. Cases cited and reviewed.

7. ———: INTEMPERANCE: INSTRUCTION: COMMON ERROR. If the de-
ceased's death in this case was caused by the use of. intoxicating
liquors, plaintiff ought not to recover and defendant can not complain
of such an instruction in this case because its own instruction con-
tained the same error.

VOL. 61—7

Neudeck v. Grand Lodge.

*Appeal from the Cass Circuit Court.*—Hon. W. W. Wood, Judge.

Reversed and remanded.

*F. H. Bacon* and *N. M. Givan* for appellant.

(1) The proofs of death, furnished by the lodge in accordance with the laws of the order, should have been admitted in evidence because it was part of the contract of Buddy that these proofs should be furnished and that upon them the defendant should determine its liability. Under the contract in this case the proofs of death were admissible as *prima facie* evidence of the fact stated therein. *Ins. Co. v. Higgenbotham*, 95 U. S. 380; *Ins. Co. v. Newton*, 22 Wallace 32; *Bentz v. Aid Ass'n*, 40 Minn. 202; 41 N. W. Rep. 1037; *Bachmeyer v. Mut. R. Fund L. Ass'n*, 82 Wis. 255; *Leman v. Ins. Co.*, 15 S. Rep. 381. (2) The proceedings of the coroner's inquest were admissible to show that an inquest was held, if for no other purpose. On this point it is only necessary to cite *Davey v. Ins. Co.*, 38 Fed. Rep. 650. (3) The court erred in sustaining plaintiff's objections to the hypothetical questions asked witnesses Moad and Richardson. These hypothetical questions were in proper form and should have been answered. The evidence was clearly admissible under rulings of this court. Greenleaf on Evidence sec. 440; *Ins. Co. v. Kielgast*, 26 Ill. App. 567; *Wooline v. Bick*, 39 Mo. App. 495; *Johnson v. Moffet*, 19 Mo. App. 161; *Benjamin v. Railroad*, 50 Mo. App. 609; *Riley v. Sparks*, 52 Mo. App. 572; *Goss v. Railroad*, 50 Mo. App. 614; *Strauss v. Railroad*, 86 Mo. 422. (4) The witness Richardson was asked whether he had heard the evidence in the case and he answered that he had. He was then asked what, in his opinion, from the evidence offered

in the case, was the cause of the death of Buddy, which question was objected to by the plaintiff and the objection was sustained. *State v. Hayden*, 51 Vt. 296; *Page v. State*, 61 Ala. 16; *Carpenter v. Blake*, 2 Lansing, 206; *Hand v. Brookline*, 126 Mass. 324; *Tingley v. Cowgill*, 48 Mo. 291; *Sikes v. Payne*, 10 Ired. (N. C.) L. 280; *Gilman v. Strafford*, 50 Vt. 723; *Hunk v. Gas Co.*, 8 Allen, 169; Greenleaf on Evidence [12 Ed.], sec. 440 *Turner v. Haar*, 114 Mo. 335; *Russ v. Railroad*, 112 Mo. 48. (5) Error was committed by the court in excluding the record of the proceedings of the lodge (Rec. p. 131) in regard to Buddy, because the records of the lodge are admissible in evidence against its members. *Bagley v. Lodge*, 131 Ill. 498; 22 N. E. Rep. 487; *Hamill v. Supreme Lodge*, 152 Pa. St. 537; 25 Atl. Rep. 645; *Backdahl v. Grand Lodge, etc.*, 46 Minn. 61; 48 N. W. Rep. 454. And these records may be contradicted or explained. *Supreme Lodge, etc., v. Wickser*, 72 Tex. 257; 12 S. W. Rep. 175; *Hawkshaw v. Supreme Lodge, etc.*, 29 Fed Rep. 770. (6) The court erred in sustaining the objections of plaintiffs to the questions asked witnesses Moad and Garnett, as to Buddy's reputation in the community for drinking. *Hatt v. Nay*, 144 Mass. 186; *Monahan v. Worcester*, 150 Mass. 440; 1 Greenleaf on Evidence, secs. 101, 55, 51*a*; *Stanley v. State*, 26 Ala. 26; *Ellers v. State*, 25 Ohio St. 586; 3 Am. and Eng. Encyclopedia of Law, p. 114; *Drown v. Allen* 91 Pa. St. 393. (7) The court erred in giving instructions 2, 3, 4 and 5 asked for by plaintiffs. *Ins. Co. v. Ward*, 140 U. S. 76.

*Geo. B. Strother* and *Wm. L. Jarrott* for respondent.

(1) The court did not err in refusing to admit the copy of the evidence taken at the coroner's inquest. *Goldshmidt v. Ins. Co.*, 106 N. Y. 486; 7 N. E. Rep.

408: The above case discusses the case of the *Ins. Co. v. Newton*, 22 Wallace, 32. (2) The statement of the physician in the proofs of death were properly excluded. She had no knowledge or information as to the contents. *Buffalo L., T. and S-D. Co. v. K. T. & M. M. A. Ass'n*, 27 N. E. Rep. 942. (3) Plaintiff introduced benefit certificate, which is *prima facie* evidence of the member's good standing at and from date of issue, and the burden of proof is on defendant to show that he has lost it. *Mulroy v. Knights*, 28 Mo. App. 463–467, and cases cited; *Forse v. Lodge*, 41 Mo. App. 106. (4) The court did not err in excluding the hypothetical questions asked the witnesses Drs. Moad and Richardson. An expert witness should not be allowed to state the cause of a person's death, from the evidence in the case, where the evidence is disputed. When the expert has no kowledge of the facts, except such as he has derived from the testimony of other witnesses, and those facts are controverted he can not properly be allowed to give a direct opinion thereon. *Guiterman v. Ins. Co.*, 83 N. Y. 358–365; *Reynolds v. Robinson*, 64 N. Y. 289; *Avers v. Water Com.* 22 Hun, 297; *Higbie v. Ins. Co.*, 73 N. Y. 316; *McCullum v. Seward*, 62 N. Y. 316; *Walker v. Field*, 28 Ga. 237; *Horne v. Williams*, 12 Ind. 224; *Crawford v. Wolf*, 29 Iowa, 567; *Butler v. Ins. Co.*, 45 Iowa, 93; *Spear v. Richardson*, 37 N. H. 23; *Wright v. Hardy*, 22 Wis. 348; *Hoard v. Peck*, 56 Barb. (N. Y.) 202; *Hunt v. Gaslight Co.*, 8 Gray (Mass.), 169; *State v. Bowman*, 78 N. C. 509; *Donohue v. Railroad*, 91 Mo. 357; *Reynolds v. Robinson*, *supra*; *Freeman v. Lawrence*, 11 Jones and Sp. 286; *Dolz v. Morris*, 10 Hun, 201; *McMechen v. McMechen*, 17 W. Va. 694; *U. S. v. McGlue*, 1 Curt. (U. S.), 1. (5) The question propounded to the witness, Dr. Richardson, was properly excluded. Rogers on Expert Testimony, pp. 63, 64. An expert is not allowed to

draw inferences or conclusions of fact from the evidence. *Woodbury v. Obear*, 7 Gray (73 Mass.), 467; Law of Witnesses, Rapalje, sec. 294, p. 493; *Freeman v. Lawrence*, 43 N. Y. S. C. 288; Law of Witnesses, sec. 294, p. 496; *Polk v. State*, 36 Ark. 117; *Golding v. Golding*, 6 Mo. App. 602. (6) The criticism defendant makes on instruction number 2, is that it uses this language: "That his death was caused directly by the excessive use of intoxicating liquors." That the word excessive is not in the application. Besides, it is the same language used in the instruction number 2 asked by defendant and given by the court. For a parallel case, see *Singer v. Dicknite*, 51 Mo. App. 245–248; *Stevens v. Crane*, 116 Mo. 408–413; *Diel v. Stegner*, 56 Mo. App. 535–540; *Singer v. Dicknite*, 51 Mo. App. 248; *Whitmore v. Lodge*, 100 Mo. 36; *Mowry v. Ins. Co.*, 1 Big. L. and Acc. Ins. Cas. 698; 9 R. I. 346; *Swick v. Ins. Co.*, 2 Dil. C. Ct., 160; *Ins. Co. v. Daly*, 65 Ind. 6; *Holterhoff v. Ins. Co.*, 3 Am. Law. Record, 272.

SMITH P. J.—Susan E. Neudeck, the wife of the other plaintiff and daughter of Frederick Buddy, now deceased, brought this action on a benefit certificate issued by the defendant, an incorporated benevolent society in this state, to her father, the said Frederick Buddy, in his lifetime, to recover the sum of $2,000, which amount defendant, by the terms of said benefit certificate, agreed to pay plaintiff on the death of said Buddy, which plaintiffs allege in their petition was caused by apoplexy.

The answer of the defendant admitted the issue and delivery to the said Buddy of the said beneficiary certificate, and the death of the latter. It interposed several special defenses to plaintiff's action, to the effect that the application on which the beneficiary certificate

was issued provided, that "should it hereafter appear that I have made false statements in any particular, or may have become an habitual drunkard, or I shall hereafter engage in the business of dramshop keeper, or bar-tender, or my death be caused directly by the use of intoxicating liquors　*　*　*　it is hereby agreed upon my part, that said false statements and actions shall render null and void forever my beneficiary certificate, to be hereafter issued upon the basis of this agreement and the medical examiner's report attached to this application."

In the medical examiner's report are the following questions and answers: "*Q.* Have you ever been addicted to the excessive or intemperate use of malt, alcoholic or narcotic stimulants? *A.* No. *Q.* Do you use intoxicating drinks daily or habitually as a beverage? *A.* No." It was further alleged that said answers were false and that said Buddy intentionally concealed and failed to disclose the fact that he was then, and for a long time prior thereto had been, addicted to the habitual use of malt and alcoholic stimulants, or that he then used intoxicating drinks daily or habitually as a beverage. The answer further alleged that Buddy had, for a long time prior to his death, became and was an habitual drunkard, and that his death was caused directly by the excessive use of intoxicating liquors.

There was a trial by jury which resulted in judgment for the plaintiff, to reverse which this appeal is prosecuted.

I. The first error assigned by the appealing defendant is that the trial court erred in refusing to allow it to introduce in evidence the official notification by the subordinate lodge of the death of Buddy. The constitution of the order provides that, upon the death of a member, it shall be the duty of the subordinate lodge

of which he was a member, to notify officially, by prescribed form of death notice, the grand recorder, etc. Const. sec. 8, art. 6. What the prescribed form was does not appear further than from the testimony of the grand recorder, who stated that the notification as to Buddy's death was in the *prescribed form*. It is clear that if there existed, as no doubt there did, a prescribed form of notification, then there was better evidence of it than that just stated. It was a question for the court to determine whether the notification conformed in its essentials to that prescribed by the order. Primary proof of the prescribed form should have been produced, and if that were not legally possible, then secondary evidence should have been offered in the place of it.

It appears from the certificate of Dr. Moad, which is part of the official notification offered in evidence, that he did not see Buddy until after he was dead, but that he judged that he (Buddy) died from apoplexy and, from the history of the case, he judged it was from the excessive use of alcohol. There was nothing in the contractual relations between Buddy and defendant requiring that the notification of the death should state its cause, or, if so, that such notification should constitute evidence of it on a trial of an action at law, when that question is material. The cause of the death was left to be proved by common law evidence. It would be strange, indeed, if the learned physician who only looked upon the inanimate body of Buddy could be permitted, under his certificate, to testify his opinion, not only as to the disease of which he he died, but the cause of the disease, the latter from hearsay—and thus establish defendant's defense. The plaintiff did not know that the physician had, by his certificate, stated a fact which, if true, would bar her right to recover the sum provided in the

benefit certificate, and could in no way be bound by his statement of any material fact in issue between her and the defendant. The defendant could not convert the unauthorized statements made in the certificate of the physician as to the cause of the death of Buddy, into evidence of that fact, on a trial of an action at law, where that is the vital issue. The certificate, as far as it tends to prove the cause of the death, for the reasons above stated, was inadmisible in evidence.

II. Whether a certified copy of the proceedings of the coroner's inquest was admitted or excluded does not appear from the record. If it was excluded, on the objection of plaintiff, as the defendant contends, then it does not appear that to the ruling of the court in excluding it, defendant saved an exception.

III. The defendant offered in evidence a portion of the record of the proceedings of the lodge to which Buddy belonged, showing that a member of the grievance committee reported that Buddy had been violating the laws of the order, "by becoming intoxicated," and that thereupon the grievance committee was instructed to "confer with Buddy in order to try to reform him." This offer was by the court rejected. It appears from the parol evidence, previously adduced by defendant that the steps recited in the record offered had been taken in the lodge and that the grievance committee, or individual members of it, had interviewed Buddy for the purpose of ascertaining whether the accusation made against him in the lodge was true or not, and if true, to prevail upon him to reform. These witnesses testified to the conversations between Buddy and themselves and the results. The committee made no report to the lodge of their action. Every step taken was fully testified to by them, so that no harm resulted to the defendant from the action of the court

in excluding the record of a fact which was, in effect, conceded to exist.

IV.   The defendant objects that the court erred in refusing to permit it to ask a witness whether he knew the reputation of Buddy in the community in which he lived, for drinking.   The issue was whether Buddy was addicted to the habitual use of malt and alcoholic liquors as a beverage.   Was the evidence which defendant sought to elicit by the question propounded admissible, and if so, did it tend to establish the affirmative of this issue?   It has been ruled that on an indictment for being a common gambler, it is not competent to show that the accused is by reputation a common gambler.   His acts, and not his character, must be shown.   *Commonwealth v. Hopkins*, 2 Dana, 418.   It has been held by us that, on an indictment for setting up and keeping a common gaming house, evidence of the general reputation of the *defendant* as a gambler is admissible for the purpose of establishing the character of the house.   *State v. Mosby*, 53 Mo. App. 571.   It is considered that evidence of general reputation, reputed ownership, public rumor, general notoriety and the like, though composed of speech of third persons not under oath, is original evidence, and not hearsay; the subject of inquiry being the concurrence of many voices to the same fact. 1 Greenleaf on Evidence, sec. 101; Abbot's Trial Evidence, 179.

In 1 Bishop on Marriage, Divorce and Separation, section 936, it is said that "the reputation that the parties are married is a fact naturally, and, of course, following cohabitation in appearance matrimonial. It is its shadow.   Therefore, when connected with such cohabitation, as it commonly is, it is admissible and to be looked for in the evidence, though its omission would not necessarily be fatal.   Alone, and as a mere

shadow of what may always be directly shown, if it exists, it would seem in principle not to be admissible, and its sufficiency, when unaccompanied by proof of the main fact, has been denied. * * * But, if there is a conflict in the repute, it will not establish the marriage; though, in connection with conduct, it may when preponderating." See, also, Greenleaf on Evidence, sec. 107.

While the reputation of Buddy was not the ultimate fact to be proved, yet we are inclined to think that, since there is proof of acts which tend to show that he was addicted to the intemperate use of malt and alcoholic liquors, in connection with such proof it was permissible for defendant to prove his (Buddy's) reputation in the community where he lived for drinking. In that connection it would possess some slight probative force, while alone it would, we think, be inadmissible.

V. The defendant further objects that the court erred in refusing to permit it to propound to the expert witness this question: "From the evidence that you have listened to on this trial, what is your opinion as to the cause of Buddy's death?" We are not of the opinion that this question was proper. It is not the province of a witness, testifying as an expert, to draw inferences from the evidence of other witnesses, unless the facts testified to are clear and uncontroverted, or to take into consideration such facts as he can recollect that have been testified to, and thus form an opinion; he should have full information of the ascertained or supposed state of facts upon which his opinion is based. Where the facts are controverted, or are not entirely clear, a hypothetical question may be put, based upon the facts claimed to have been proved. *Guiterman v. Steamboat Co.*, 83 N. Y. 358; *Reynolds v. Robinson*, 64 N. Y. 589; *Higbee v. Ins. Co.*, 53 N. Y. 603; *Insurance*

*Co. v. May,* 20 Ohio, 211. It is the well settled rule that the question to the expert witness must be so shaped as to give no occasion to mentally draw his own conclusion from the whole evidence or a part thereof, and from the conclusion so drawn, express his opinion or to decide as to the weight of the evidence or the credibility of witnesses. *McMechen v. McMechen,* 17 W. Va. 694; *United States v. McGlue,* 1 Curt. U. S. 1; *Walker v. Field,* 28 Ga. 237; *Horne v. Williams,* 12 Ind. 324; *Crawford v. Wolf,* 29 Iowa, 567; *Butler v. Life Ins.,* 45 Iowa, 93; *Spear v. Richardson,* 37 N. H. 23; *Wright v. Hardy,* 22 Wis. 348; *Hoard v. Peck,* 56 Barb. (N. Y.), 202.

The jury were not informed, in the question propounded, of the basis upon which the expert was asked to express his opinion. The expert was left to draw his own conclusions from the evidence of the witnesses whom he had heard testify. The evidence, in some material particulars, was more or less conflicting. One of the experts testified that his opinion was formed from what he could hear, knew personally, and from existing circumstances.

There was no autopsy to ascertain the cause, seat, or nature of the disease. In the absence of this, or of any state of undisputed facts, it seems to us that the opinion of an expert would rest upon a very slight and narrow foundation, and would be of very doubtful value. Such an opinion would be but little, if anything, more than bare conjecture. It is manifestly improper for an expert to express an opinion, warranted only by assuming the truthfulness and accuracy of what witnesses have testified. Such evidence is competent only when founded on facts within the personal knowledge and observation of the expert, or upon the hypothesis of the finding of the jury. *State v. Bowman,*

78 N. C. 509; Rogers on Expert Testimony, 66. He must give an opinion based on a state of facts which he himself has witnessed, or which are detailed to him by other witnesses, and about which there is no dispute, or which are put to him in the form of a hypothetical case. And in putting hypothetical questions, facts may be assumed where there is evidence tending to establish them and which is relevant to the theories which the parties are attempting to uphold. *Benjamin v. Railroad*, 50 Mo. App. 609; *Goss v. Railroad*, 50 Mo. App. 614; *Riley v. Sparks*, 52 Mo. App. 572. Accordingly it is plain that none of the various questions which the court refused to permit defendant to propound to the expert witness were proper.

VI. The defendant objects that the plaintiff's instructions, which declare that, unless the death of Buddy was caused directly by the *excessive* use of intoxicating liquors, to find for the plaintiff, were erroneous. If his death was *caused* by the use of intoxicating liquors plaintiff ought not to recover. Whether the italicized adjective was properly employed in the instruction or not, it is not necessary for us to decide, since the defendant has used it in a like connection in its instruction number 2. If it is error, it is common to both parties, and of which neither can complain.

The defendant's refused instructions 10 and 11 were properly refused. The theory of these is not within the limits of the issues made by the pleadings. The other two of defendant's refused instructions were improper expressions of the law, in view of the others given by the court. The criticism of the instructions of plaintiff are exceedingly hypercritical. We can discover no solid ground of objection to any of them.

But for the error already pointed out, in respect to the rejection of the defendant's offers of proof of

the reputation of Buddy for drinking, we should be compelled to affirm the judgment; but, in view of that error, we must reverse the judgment and remand the cause. All concur.