STATE OF MISSOURI, Respondent, v. HENRY FROEMSDORF and MATTIE FROEMSDORF, Appellants.*

St. Louis Court of Appeals. Opinion Filed January 5, 1926.

1. **INDICTMENT AND INFORMATION:** Gaming House: Sufficiency of Indictment. An indictment charging setting up and keeping a gaming house, in violation of section 3541, Revised Statutes 1919, *held* sufficient, as charging the offense in the language of the statute.

218 Mo. App.—31.

State v. Froemsdorf.

2. **GAMING-HOUSE: Evidence: Reputation of House and Frequenters: Admissible.** In a prosecution, under section 3541, Revised Statutes 1919, for setting up and keeping a gaming house, the State may show the reputation of the house and, to that end, may show the reputation of the frequenters of the place.

3. ————: ————: **To Sustain Conviction Not Necessary to Show That Keeper Participated in or Profited by Game.** To sustain a conviction for setting up and keeping a gaming house, in violation of section 3541, Revised Statutes 1919, it need not be shown that the defendants profited from the vice, nor that they actually participated in the game itself.

4. ————: ————: **Sufficiency of Evidence to Support Conviction.** In a prosecution, under section 3541, Revised Statutes 1919, for setting up and keeping a gaming house, evidence reviewed and *held* sufficient to support the conviction.

*Headnotes 1. Gaming, 27 C. J., Section 189; Indictments and Informations, 31 C. J., Section 260; 2. Gaming, 27 C. J., Section 240; 3. Gaming, 27 C. J., Sections 159 (Anno), 167; 4. Gaming, 27 C. J., Section 241.

Appeal from the Circuit Court of Cape Girardeau County.—*Hon. Frank Kelly,* Judge.

AFFIRMED.

*Alexander & Coffer* for appellants.

(1) The evidence was insufficient as a matter of law to carry the case to the jury. The several demurrers should have been sustained. State v. Mosby, 53 Mo. App. 571; State v. Miller, 234 Mo. 588 and cases cited; State v. Solon, 24 Mo. 684; State v. Lyman (Del.), 5 Har. 510; Section 3541 and 3548, R. S. 1919. (a) Neither defendant is identified as having any connection with any gambling game. State v. Miller, supra. (b) There is not sufficient proof of setting up or maintaining any gambling device or gambling house. Section 3548, supra. Morgan v. State, 42 Tex. Cr. R. 422; State v. Irvin, 117 Iowa, 569; State v. Miller, supra. 2 Words and Phrases, 1st series, pg. 132, 3 et seq.; vol. 4, pg. 3032 et seq.; vol.

7, pg. 6445. (c)   There is no evidence to prove either defendant was a master or mistress of any gambling game, or the keeper of a gambling house.   State v. Miller, supra; Section 3548, supra; State v. Hoelcher, 163 Mo. App. 352. (d)   The state's evidence was wholly insufficient as a matter of law to overcome the presumption of innocence.   State v. Patton, 255 Mo. 262; State v. Miller, supra.   (2)   Permitting evidence to go to the jury of the reputation of the house without evidence of (1) the place being a gambling house, and (2) that defendants were keepers thereof was prejudicial error. State v. Patton, supra; State v. Miller, supra; State v. Dudley, 56 Mo. App. 450; State v. Bernard, 64 Mo. 260. (3)   The indictment fails to charge sufficient facts to constitute the crime of setting up and maintaining a gambling house.   Section 3541, 3548, supra; State v. Solon, supra; State v. Miller, supra.

*Frank Hines* Prosecuting Attorney, for respondent.

(1)   The indictment is sufficient and is in the form heretofore employed in charges based on section 3541, R. S. 1919, being section 4754, R. S. 1909.   Kelly's Criminal Law, sec. 955, page 855. (a)   The two cases cited by appellants on this point, State v. Miller, 234 Mo. 588, and State v. Solon, 247 Mo. 672, are not in point because they are cases based on another and different statute, being section 3537, R. S. 1919, that is sec. 4750, R. S. 1909, which is leveled against gaming devices, and contains other and different elements constituting the crime, from the statute under consideration now.   An examination of the following cases based upon the other section of the statute, that is on section 3537, will disclose the difference in the two sections and in their construction: State v. Morris, 272 Mo. 520; State v. Wade, 267 Mo. 249; State v. Harper, 190 S. W. 272. (b)   The wife may be jointly indicted with her husband for keeping a gaming house. Kelly's Criminal Law, sec. 18, p. 19.   The title shown by the deed offered in evidence rested in both defendants

as tenants by the entireties and gave to them jointly the possession, use and occupancy, care and control of the premises in which the gaming house was shown to have been kept. (2) It was competent to show on behalf of the State the reputation of the house and to that end to show the reputations of the frequenters of the house, and even of the defendants themselves. State v. Mosby, 53 Mo. App. 571. (3) The State having shown by direct testimony, and also shown by acts and circumstances from which the guilt of defendants could be deduced, that defendants were guilty of the crime charged, it was permissible to show the character of the house kept by defendants. But it was not necessary to first show the guilt of defendants on the charge, before offering evidence as to the character of the house. It was competent to prove the reputation of the house, as that proof tended to establish the guilt of the defendant of the crime charged. (4) A gaming house may be kept without charge. And it was not necessary for the State to prove that defendants participated in the game. State v. Mosby, 53 Mo. App. 571.

DAUES, P. J.—This is a prosecution, by indictment, in Cape Girardeau county, Missouri, charging the defendants with setting up and keeping a gaming house, in violation of section 3541, Revised Statutes 1919. Defendants were convicted and their punishment fixed at a fine of $400 each. After being unsuccessful in their motion for new trial and in arrest of judgment, defendants have appealed.

The indictment is as follows; omitting formal parts:

"That Henry Froemsdorf and Mattie Froemsdorf on the ——— day of December, A. D., 1922, and from that date until the 5th day of May, A. D. 1923, did wilfully and unlawfully set up and keep a gaming house, and did then and there permit divers persons, Leo Boussum, Roy Cain, Romance Fulton, Jack Fisher, William Hannebrink and divers other persons whose names are

unknown to these jurors, to come together and play for money, at certain games in said house of the defendants Henry Froemsdorf and Mattie Froemsdorf, there situate, against the peace and dignity of the State.''

The State adduced evidence tending to show that the defendants jointly owned, occupied and controlled a certain building in the city of Cape Girardeau. It was shown that between the dates mentioned in the indictment this place was under almost constant surveilance of the police officers of that city.

Policeman Robert Wilson testified for the State that, on complaint of neighbors and citizens generally, he went to this place on numerous occasions, always about midnight, to inform himself as to the character of the house kept by defendants; that on one night he concealed himself in a garage across the street, and between the hours of 11 o'clock P. M., and 1 o'clock A. M., he saw twenty-one men go into the place and come out of same; that he looked through the window in that portion of the house usually used as a kitchen, and saw a game of chance, commonly known as a crap game, being conducted on a table, and he recognized several of the players. He testified, further, that early Christmas, 1922, he saw two young men, whom he knew and recognized as Roy Cain and Leo Boussum, coming out of the place, and that he took Cain in charge because he was so much under the influence of liquor that he fell in the street. He said in his vigil of the place he observed a large number of men, both white and colored, going in and out of same, and it was his testimony, too, that the people who were frequenting the place were not boarders but were men who lived about town.

Policeman H. F. Wickham also testified for the State that he was often called to watch this place on Saturday and Sunday nights, describing the situation closely corroborating Policeman Wilson as to what was going on in the place.

Roy Cain, one of the persons seen by the police officer leaving the house on Christmas morning, 1922, was called as a witness for the State, and though he gave information reluctantly, he admitted that he had been to the place of defendants at the time mentioned by the officer; that the place was known as "the Froemsdorf place," and that he was accompanied by Leo Boussum on that occasion; that he went into the house through the front door and joined a number of men who were gambling with dice in the kitchen. He testified that it was a general crap game in which he lost six or seven dollars. When asked who was engaged in the game, he answered: "Everybody was betting." He also admitted that he had been there before, and said that the place had the reputation generally of being a gambling house at the time he was there. He also corroborated the police officers by admitting that he was arrested for being drunk and having liquor in his possession at the time named by the policeman.

Leo Boussum also testified for the State. He admitted that he was with Cain on his Christmas visit to this place. He said there were seven or eight persons in the game besides himself, and that all were active in betting money in one general dice game, and that he lost money in the game. This witness was then nineteen years of age, and said he left the house because there was a general row growing out of the dice game; that when he and Cain left, after having been there nearly an hour, the other six players remained, continuing the game.

Mrs. Hulda Maystedt testified for the State that she knew defendants' place; that at about 3 o'clock in the morning, on the last Sunday in January, 1923, she went there to induce her husband to come home; that when she arrived at the place, at that hour, both of the defendants were up and in the front room of the house. She said she was admitted by defendant Mattie Froemsdorf; that she located her husband with several of his

acquaintances whom she knew, and also saw others whom she did not know, all being around the table indulging in a dice game, and that she saw the men actually en- gaged in the shaking of the dice.  She protested against her husband frequenting the place, and asked defendant Henry Froemsdorf to refuse to allow her husband to again come there, and that Froemsdorf promised her he would keep him away.  She said she knew the reputation of the Froemsdorf place, and that it bore the reputation of being a gambling house.  She further testified that on other occasions she had been to this place, and each time had seen a number of men going in and out of the house.

The State then introduced a deed of record to the property, showing title in these defendants.

The defendant Henry Froemsdorf testified that he lived at this place, but flatly denied that any gambling was conducted there with his knowledge or consent; that he worked in a sawmill most of the time, and that he and his wife kept boarders at the place for whom they served meals, and that they also served meals for different peo- ple who visited them frequently.  He said that the boarders would bring friends with them, and that the boarders and their friends would go to the kitchen, but if there was any gambling there he knew nothing about it.  He denied knowing Cain and Boussum, and denied that he had ever admitted them into his house, or into any crap game.  He admitted that Mrs. Meystedt came there on the morning mentioned by her, and that she did go to the kitchen, explaining that particular circumstance in the following questions and answers:

"Q.  And didn't you see her walk over to that door, which couldn't have been over four or five feet right due east, and look in where that crap game was going on?  A.  I seen her open the door, yes.

"Q.  Couldn't you see in that room the same as she could?  A.  No, sir; I never got up off my seat."

This defendant insisted that the persons in the kitchen had been playing cards, and that they often had card games in his house, but that they did not play for money.

Defendant Mattie Froemsdorf denied any knowledge of gambling at the house, and said that she served lunches at the place as late as midnight; that the boarders and their friends often asked for a table upon which to play cards. She denied knowing Cain and Bossum, but admitted that Mrs. Meystedt visited the place at the time heretofore mentioned, and that it was she who opened the door for her to enter on that occasion, though she said she had been lying down before that and arose to allow Mrs. Meystedt to enter. She said she did not know there was anybody in the kitchen at that time, and that she had heard no noise whatsoever that indicated that persons had congregated there.

One other witness, John Morton, was produced by defendants, who said he was acquainted with the defendants; that he went to their home as much as two or three times a week and that he never saw any evidence of gambling there.

The first assignment of error challenges the sufficiency of the indictment. The indictment very appropriately charges the offense in the language of the statute and is invulnerable. Indeed, counsel who orally argued the case here for defendants concedes the sufficiency of the indictment.

Appellants' next insistence is that the court erred in permitting evidence to go to the jury as to the reputation of defendants' house. It has been definitely ruled in this State that the prosecution in a case of this character may show the reputation of the house, and, indeed, to that end the State may show the reputation of the frequenters of the place. [State v. Mosby, 53 Mo. App. 571. See also: State v. Barnard, 64 Mo. 260; State v. Price, 115 Mo. 656, 92 S. W. 174; Neudeck v.

Grand Lodge, 61 Mo. App. 97; State v. Flick, 198 S. W. 1134; State v. Kearns, 264 S. W. 775.]

The further point is made that it was not shown that the defendants profited from the vice, nor that they actually participated in the game itself. This is not necessary. [State v. Mosby, supra.]

Finally, it is said that the State's proof is not sufficient to support the conviction. Without again going over the evidence, we find the record containing an abundance of evidence, both direct and circumstantial, which supports the verdict and judgment. It seems that the police officers proceeded cautiously in this case to lay the foundation in securing sufficient substantial evidence before instituting the prosecution. They made observations on many nights to determine whether this house was being used for gaming purposes; they observed the game actually in progress, and saw that at unusually late hours men were going into and coming out of this place. That the frequenters were not restricted entirely to white people was also shown. A wife, prompted by solicitude for her husband, finds him at this place at 3 o'clock in the morning where gambling was then being carried on. Cain and Boussum, when forced by the circumstances of being arrested on another charge, reluctantly admitted that they had actually gambled in the house, together with a large number of other men. Thrown into the balance, was the reputation of the place that it was a gambling house. It was then clearly for the jury to determine the weight of the evidence and the credibility of the witnesses. It may be in place to recite that while defendants positively denied their guilt, their explanation as to the boarders using this room innocently for card playing became seriously involved and very nebulous in their cross examination. If they were supported at all it was by only one witness, a former neighbor, who simply said that during his visits at the place he saw no gambling.

The instant case should not be confused with the decisions under section 3537, Revised Statutes of Mis-

souri 1919, which is a felony statute and contains other and different elements constituting the crime, and such are the cases of State v. Miller, 234 Mo. 588, 137 S. W. 887, and State v. Solon, 247 Mo. 672, 153 S. W. 1023, relied upon by appellants.

The case was fairly tried on proper instructions, and the jury found both defendants guilty. We find no prejudicial error in the record and the judgment of conviction should be affirmed. It is so ordered. *Becker* and *Nipper, JJ.,* concur.