ALFRED BUCKALEW, Respondent, v. QUINCY, OMAHA & KANSAS CITY RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, June 20, 1904.

1. **MASTER AND SERVANT: Negligence: Demurrer to the Evidence: Assumption of Risk: Glaring Danger.** On a review of the evidence it is held that it did not authorize the withdrawal of the case from the jury on the ground that the plaintiff was a volunteer in the work he was performing, or that the risk was too glaringly dangerous or that the master had furnished sufficient and proper tools or that the plaintiff had assumed the risk.

2. **EVIDENCE: Expert: When Competent.** When there is a fact which calls for any particular knowledge or experience, or if men of common information are not capable of forming a judgment in relation thereto, expert evidence is competent.

3. **TRIAL PRACTICE: Evidence: Harmless Error.** Though error is committed in the rejection of evidence, yet if subsequently the evidence is all admitted the error is harmless.

4. **EVIDENCE: Weight of Expert: Instruction.** The modification of an instruction set out in the opinion and relating to the weight to be given expert testimony is held harmless if the instruction was at all proper since the competency of an expert witness is for the court, and the weight of his testimony exclusively for the jury.

5. **MASTER AND SERVANT: Negligence: Instruction.** Certain instructions relating to the duty of master and servant are held to have been disposed of in considering the demurrer to the evidence.

6. ——: **Assumption of Risk: Instruction.** The rule on the assumption of risk by the servant as laid down in Thompson v. Railway, 86 Mo. 147, is approved.

7. **TRIAL PRACTICE: Instruction: Law Books.** The fact that the volume and page in the reports or the section of the Statutes appear in pencil at the foot of an instruction is not error when neither the Statutes nor the reports were ever seen by the jury.

Appeal from Grundy Circuit Court.—*Hon. P. C. Stepp,* Judge.

AFFIRMED.

*J. G. Trimble* and *Hall & Hall* for appellant.

(1)  The trial court erred in refusing to give defendant's instruction in the nature of a demurrer to the evidence.   There was no evidence that the section foreman Lemley told plaintiff where to take hold of the switch rail, if he told him at all.   The switch rail was fifteen feet long, the foreman was in plain, open view, striking with the spike maul and plaintiff, with his eyes open, came up while Lemley's back was turned

and voluntarily placed himself in reach of the maul. Hurst v. Railway, 163 Mo. 322; Graney v. Railway, 157 Mo. 679; McFadin v. Catron, 138 Mo. 213; Bradley v. Railway, 138 Mo. 302; Hewitt v. Steel, 136 Mo. 334; Holloran v. Foundry, 133 Mo. 470; Steinhauser v. Spraul, 127 Mo. 562; Wilson v. Albert, 89 Mo. 544; Zentz v. Chappell, 77 S. W. (K. C. App.) 86; Gettys v. Transit Co., 78 S. W. (St. L. App.) 82; Fugler v. Bothe, 117 Mo. 493; Marshall v. Hay Press Co., 69 Mo. App. 256; Berning v. Medart, 56 Mo. App. 443; Harff v. Green, 168 Mo. 308; Doerr v. Brewing Assn., 75 S. W. (Mo. Sup.) 600; Patton v. Railway, 179 U. S. 658, 45 Law. Ed. 361. (2) If an employee has two ways in which the required service may be performed, one of which is safe and the other unsafe, he can not recover for an injury received in performing the duty in the unsafe way, he being responsible for the choice he makes. Hurst v. Railroad, 163 Mo. 309; Moore v. Railroad, 146 Mo. 572; Hulett v. Railroad, 67 Mo. 239; Beal v. Railroad, 8 Am. Neg. (Kan.) 395; Railroad v. George, 94 Ala. 200; Quirouet v. Railroad, 8 Am. Neg. (Ga.) 183; Patton v. Railroad, 179 U. S. 658, 45 Law Ed. 361. (3) A servant assumes all the risks incident to the buisness in which he engages and the duties he engages to perform and also all such risks as shall become apparent to him by ordinary observation, or are readily discernible by a person of his age and capacity by the exercise of ordinary care; or where his means of knowledge are equally as great as those of his employer, or if he discovers the unusual risks and makes no complaint. Alcorn v. Railroad, 108 Mo. 97; Jackson v. Railroad, 104 Mo. 448; O'Hare v. Railroad, 95 Mo. 662; Porter v. Railroad, 71 Mo. 66; Thomas v. Railroad, 109 Mo. 187; Holloran v. Foundry, 133 Mo. 470; Fugler v. Bothe, 117 Mo. 493; Steinhauser v. Spraul, 127 Mo. 567; Epperson v. Cable Co., 155 Mo. 346; Watson v. Coal Co., 52 Mo. App. 366; Moore v. Wire Co., 55 Mo. App.

491; Berning v. Medart, 56 Mo. App. 443; Claybaugh v. Railway, 56 Mo. App. 630; Marshall v. Hay Press Co., 69 Mo. App. 256; Kleine v. Shoe Co., 91 Mo. App. 102. (4) The trial court erred in admitting the expert testimony of the witnesses Thrush, McClintock and Chase as to the proper method of putting on the angle-bar; this was work that required no mechanical skill or knowledge and the jury was just as capable of determining whether the manner in which the work was being done was dangerous, as were these witnesses. Grace v. Railroad, 156 Mo. 306; Hurst v. Railroad, 163 Mo. 320; Lee v. Knapp, 155 Mo. 641; Goble v. Kansas City, 148 Mo. 477; Benjamin v. Railroad, 133 Mo. 288; Edwards v. Paving Co., 92 Mo. App. 226; Graney v. Railroad, 157 Mo. 680; Koenig v. Railway, 173 Mo. 720. (5) The trial court erred in sustaining the objections to and excluding the impeaching evidence offered by defendant to prove the general reputation of the witness R. G. Davenport for honesty, integrity and fair dealing in the community in which he resided. State v. Shields, 13 Mo. 236; State v. Hamilton, 55 Mo. 523; State v. Breedon, 58 Mo. 507; State v. Miller, 71 Mo. 590; State v. Grant, 79 Mo. 133; State v. Taylor, 98 Mo. 245; State v. Raven, 115 Mo. 422; Kingman v. Showley, 61 Mo. App. 57; Grocer Co. v. Tagart, 78 Mo. App. 169; Sitton v. Grand Lodge, 84 Mo. App. 208. (6) The trial court erred in refusing to give appellant's instruction 7 as offered and in changing the same and giving it as so changed. Rogers on Expert Testimony (1 Ed.), sec. 42, p. 65; Fullerton v. Fordyce, 144 Mo. 531; Haight v. Vallet, 89 Cal. 245, 23 Am. St. 465; Clark v. State, 12 Ohio 483, 40 Am. Dec. 481; Rutherford v. Morris, 77 Ill. 404; Darring v. Railroad, 52 Conn. 285; Hays v. Wells, 34 Md. 513; Purifier Co. v. Cheatham, 4 Dill. 448; Benjamin v. Railway, 133 Mo. 289. (7) The trial court erred in giving plaintiff's instruction 3. Zumault v. Railroad, 175 Mo. 311; Sharp v. Railway, 161 Mo. 235; Loring v. Railroad, 128 Mo. 349; Tanner v. Rail-

road, 161 Mo. 497. (8) The trial court erred in giving plaintiff's instruction 4. Skipton v. Railway, 82 Mo. App. 143; Malory v. Railway, 84 Mo. 270; Candee v. Railway, 130 Mo. 152. (9) The trial court erred in giving plaintiff's instruction 1 and in refusing to give defendant's instruction 2, for there was no evidence that there was any failure on the part of the defendant to furnish necessary tools and appliances with which to work, and the jury should have been so instructed. Gutridge v. Railroad, 94 Mo. 468; Marr v. Bunker, 92 Mo. App. 661; McAtee v. Valandingham, 75 Mo. App. 45; Bergeman v. Railroad, 104 Mo. 90; Adolff v. Baking Co., 73 S. W. 325; Railroad v. Railroad, 118 Mo. 625; McCarty v. Fagan, 42 Mo. App. 626; Lyons v. Carter, 84 Mo. App. 488; Thompson v. Railroad, 93 Mo. App. 554; Ryan v. Kelly, 9 Mo. App. 592; Fairgrieve v. Moberly, 29 Mo. App. 141; Graham v. Gross, 50 Mo. App. 380; Culberson v. Railroad, 50 Mo. App. 556; McKeon v. Railroad, 42 Mo. 79; Evans v. Railroad, 106 Mo. 594. (10) The court erred in permitting the jury to take with them to their jury room the list of legal authorities or references attached to plaintiff's instructions. Heller v. Publishing Co., 153 Mo. 205; Clothing Co. v. Dry Goods Co., 156 Mo. 407; Harrison v. Hance, 37 Mo. 185; Clay v. Railway, 17 Mo. App. 629; Moore v. Wire Co., 55 Mo. App. 497; Flynn v. Bridge Co., 42 Mo. App. 536; Breen v. Cooperage Co., 50 Mo. App. 202; Adolff v. Baking Co., 73 S. W. (St. L. App.) 325; Berning v. Medart, 56 Mo. App. 443; Watson v. Coal Co., 52 Mo. App. 366; Porter v. Railroad, 71 Mo. 66; Condon v. Railroad, 78 Mo. 574; Epperson v. Cable Co., 155 Mo. 372; Lamson v. Axe and Tool Co., 177 Mass. 144, 83 Am. St. 267, 58 N. E. 585.

*Platt Hubbell* and *George Hubbell* for respondent.

(1) Defendant's insistence, with respect to matters of fact, have been decided against it by the jury,

and that decision is conclusive. Weldon v. Railroad, 93 Mo. App. 673; James v. Life Assn., 148 Mo. 16; Ballard v. Railroad, 51 Mo. App. 457; Grace v. Railroad, 156 Mo. 301; O'Hare v. Railroad, 95 Mo. 667; Butts v. Bank, 99 Mo. App. 173. (2) The testimony of the mechanical experts was competent. 12 Am. & Eng. Ency. 423, 424, 425, Abb. T. B., 511, 515; Bradford v. Railroad, 64 Mo. App. 483; Helfenstein v. Medart, 136 Mo. 614; 12 Am. Eng. Ency. 435; Monahan v. Coal Co., 58 Mo. App. l. c. 74; Cooke v. Railroad, 57 Mo. App. 479; Hartman v. Muehlbach, 64 Mo. App. 581; Hamilton v. Mining Co., 108 Mo. 371. (3) Lemley negligently ordered Buckalew into a dangerous place to work, and, Lemley negligently struck Buckalew. Welden v. Railroad, 93 Mo. App. 674; Stephens v. Railroad, 96 Mo. 211; Russ v. Railroad, 112 Mo. 45; R. S. 1899, sec. 2873; Sinberg v. Falk Co., 98 Mo. App. 555; Schroeder v. Railroad, 108 Mo. 328; Rayburn v. Railroad, 74 Iowa 637; Boyle v. Railroad, 2 Am. & Eng. Railroad Cases 234; Halliburton v. Railroad, 58 Mo. App. 27; Monahan v. Clay & Coal Co., 58 Mo. App. 68; Hutson v. Railroad, 50 Mo. App. 300; Herriman v. Railroad, 27 Mo. App. 435; Eberly v. Railroad, 96 Mo. App. 361; Maxwell v. Railroad, 85 Mo. 99. (4) Contributory negligence and assumption of risk were questions of fact for the jury. As shown by the original bill of exceptions, 104 Mo. l. c. 120, is cited instead of 106 Mo. l. c. 120, at the bottom of plaintiff's sixth instruction. Hamman v. Coal & Coke Co., 156 Mo. 244. (5) The trial court committed no prejudicial error in excluding impeaching evidence offered by defendant. Roe v. Bank, 167 Mo. 421; Barbour v. McKee, 7 Mo. App. 586; Sharp v. Railroad, 114 Mo. 101; State v. Murphy, 118 Mo. 7; Erickson v. Railroad, 171 Mo. 666; State v. Soper, 148 Mo. 235; Ashley v. Green, 38 Mo. App. 290; Fullerton v. Fordyce, 144 Mo. 526; Weller v. Railroad, 164 Mo. 207. (6) The trial court committed no error in giving and refusing instructions. Hayden v. Parsons,

70 Mo. App. 493; Herriman v. Railroad, 27 Mo. App. 445; Meade v. Railroad, 68 Mo. App. 102; Tate v. Railroad, 64 Mo. 159.

SMITH, P. J.—Action to recover damages for personal injuries. The negligence upon which plaintiff relies for a recovery is specified in the petition in this way, i. e., that while the plaintiff, a common laborer, was at work for defendant under the control of its section boss, he was ordered by said boss to stoop down and take hold of the steel rails near a switch point and hold them with his hands in and about helping the said boss to adjust an angle-bar, which said angle-bar was in a close proximity to the point and place at which said boss ordered plaintiff to take hold of said rails, and which said angle-bar the said boss was then and there violently and rapidly striking with a heavy maul; that for the performance of this work, the defendant, then and there, carelessly and negligently failed to furnish the plaintiff and its other employees with reasonably safe and suitable tools and appliances for the performance of said task; that plaintiff obeyed said order and was thereby placed in an unsafe and dangerous place to work; that while plaintiff was in a stooping position, holding said rails as ordered by said boss, the plaintiff was, without fault or negligence on his part and by reason of the aforesaid carelessness and negligence of the said boss in giving said order, and so placing plaintiff in an unsafe and dangerous place to work, and by reason of the carelessness and negligence of said boss in handling said metal spike maul, and by reason of defendant's said negligent failure to furnish reasonably safe and suitable tools and appliances, struck on the left hand with said spike maul or sledge by said section boss. The answer was a general denial.

At the conclusion of the evidence the defendant interposed a demurrer thereto which was by the court denied. And this action of the court, it is now con-

tended, was an error which calls for the reversal of the plaintiff's judgment.

The evidence adduced at the trial tended to prove that, at the time of the injury the section foreman, Lemley, was replacing a "stub switch" with a "split switch" and was connecting the switch point or switch rail with the lead or track rail by means of an angle-bar known as a continuous joint angle-bar. This bar was twenty-two inches long and the lower part was bent so as to extend under the base or flange of the rail and form a groove into which the edge of the flange or base of the rail fitted and when thus adjusted it curved in against the side of the rail so as to be bolted to the two connecting rails. The switch rail was fifteen feet long and at the heel where the angle-bar was being fastened it was the same size as the other rail to which it was being connected. The rail to which the switch rail was being connected was spiked down, while the switch rail was not, it being necessary for it to be loose so that the point of it could be moved back and forth in switching from one track to the other. The foreman was engaged in driving the angle-bar to its place under and onto the heel of the switch rail and the end of the connecting rail, with a heavy spike maul weighing about ten or twelve pounds, and was standing on the north side of the rails, that being the side on which he was adjusting the angle-bar.

The plaintiff himself testified: "My hand at the time it was hit was right over the ball of the rail. Hit on the left hand. I was facing north. I had my feet on the outside rail and my hands by the switch point. By the switch point I mean the inside rail. The section foreman told me to sit down. I did sit down. I was pulling that switch rail out in line with the main rail so we could get on the angle-bar. Mr. Lemley was standing right there. He was striking on that end of the angle-bar part of the time and part of the time on that side. He was striking right in between the two

rails. My left hand was six to twelve inches from the east end of the angle-bar, I don't know just how far it was. *He told me to still hold to it. I started to get up and he says sit down there and hold it out.* I started to get up for I thought he was through. He struck two licks, the second lick he struck after I sat down there he hit my hand.''

Frisby, a witness for plaintiff, testified that at the time plaintiff was injured he was trying to pull the switch rail in line with the main rail. His hand was six or eight inches from the east end of the angle-bar. The section boss was trying to drive the angle-bar up under those rails.

Lemley, the defendant's foreman, testified that, ''the switch point was not spiked down. It was not put in proper place yet. The bridles were not on. The switch and lead rails had not been connected. In order to put the angle-bar on and join the lead rail to the switch rails the latter would have to be pulled into line with the former to put the bolts through.''

It is made clear by the evidence that before the new switch rail could be connected with the main rail it was necessary to put the former in line with the latter. Defendant's foreman knew this. Plaintiff was engaged in removing the bolts from the old switch rail, and it may be inferred that he was ordered to quit that work and take hold of the new switch rail and move it so that it could be connected with the main rail by the angle-bar. If he was not ordered in the first instance to take hold of the switch rail when he did so, the act was approved as soon as it was done. The defendant's foreman not only knew that plaintiff had hold of the rail, but the point where so held. He ordered the plaintiff to sit down, and after he had obeyed this order and pulled the *switch rail out* so that *it would join with the main rail,* supposing this was all that was required of him he started to get up, whereupon the foreman ordered him to ''sit down and to still hold it out.'' It will not do to

say that plaintiff voluntarily took hold of the switch rail. But even if he did so, defendant's foreman, with full knowledge of that fact, ordered him to continue to hold it out. At the time plaintiff was hurt by the stroke of the foreman's maul he was at work in a place required of him by the order of the foreman, and his position was not different than if he had been primarily ordered there.

The plaintiff worked under the immediate orders of a superior agent of defendant—a vice principal—who directed the manner of doing the work required of him. It was the duty of plaintiff to obey his orders in respect to the holding of the rail, unless to do so was so obviously dangerous to his senses as to have made obedience rashness amounting to contributory negligence on his part. The foreman was presumably a man of experience in the kind of work which he with plaintiff was performing, while the plaintiff was but a common laborer—and as far as the evidence shows, with little or no experience. The former knew the danger in which the latter had unwittingly placed himself. He knew, or ought to have known, the probable danger that would result to plaintiff after the moving out of the switch rail if he did not change the direction of the maul he was wielding; yet, with this knowledge, he ordered plaintiff to hold on to the rail and continued to strike in the same manner he did before the removal of the rail. This was gross negligence and if the plaintiff's injury can be attributed to that, as it fairly can be, there is liability. The plaintiff did not know that after he moved the switch rail out that the foreman would not accordingly alter the direction of the maul in striking the angle-bar. It does not appear that after the change in the position of the switch rail the foreman could not, by changing the direction of the maul, strike the angle-bar instead of making the glancing lick he did. The foreman knew that a pinchbar, or other bar, smooth strap, fishplate, or something of the kind, was the

proper appliance to be used in bringing the switch rail into position so as to connect it with the main rail and to hold it there until the angle-bar could be driven on; and, yet, knowing this, and that there were plenty of bars, straps and fishplates accessible, he ordered the plaintiff to hold the rail in place with his hands while he wrought with the maul. One of plaintiff's coemployees who was engaged in the work of replacing the switch rail started to go and fetch a pinchbar or other appliance to move the switch rail and hold it in position, when some called out, "come back, we don't need it." Either the foreman gave this order "to come back," or, if some one else gave it, he did not countermand it but let it stand, and therefore adopted it. If the order was given by another it was no doubt in a voice sufficiently loud to be heard by the foreman.. It was heard by others there at work under the foreman.

Although the defendant did have plenty of pinchbars and other tools which its foreman could have furnished the plaintiff with which to adjust and hold the switch rail, he ordered the plaintiff after he had let go, or was about to let go the rail of which he had taken hold with his hands, to continue to hold it in that way.

If the foreman had wielded the maul in the manner plaintiff had a right to think he would after the position of the switch rail was changed he—plaintiff—may have very reasonably supposed that by the use of care he could hold on to the rail without the danger of being struck and hurt by the foreman while using the maul. To continue to hold the rail in obedience to the order of the foreman was not therefore so glaringly dangerous as to amount to contributory negligence. Nor do we discover anything in the evidence to justify the conclusion that the plaintiff assumed the risk incident to obeying the order of the defendant's foreman to hold on to the rail.

In no view of the evidence which we are able to take

can we conclude that the court erred in submitting the case to the consideration of the jury.

## II.

It is contended that the court erred in permitting several expert witnesses introduced by plaintiff to testify their opinion as to the proper method of putting in a "switch point." It seems to us that it ought to require neither argument nor authority to demonstrate that in the performance of work of this kind, knowledge or skill is required in excess of that possessed by a common laborer. The rule is, that when there is a fact in a case which calls for any particular knowledge or experience, or if it be one upon which men of common information are not capable of forming a judgment, it is a case for expert evidence. Bradford v. Railroad, 64 Mo. App. l. c. 483; Hartman v. Muehlebach, 64 Mo. App. 581; Benjamin v. Railroad, 50 Mo. App. l. c. 608; Goss v. Railroad, 50 Mo. App. 623; Neudeck v. United Workmen, 61 Mo. App. 97. The plaintiff's witnesses had been engaged in the track departments of one or more railroads for several years, and had by reason thereof gained an experience and knowledge of work of that kind which qualified them to testify their opinion as to the proper way to do work like that the plaintiff was engaged in when he was hurt. There was evidence adduced on which to base the hypothetical questions propounded to them within the meaning of the rule announced in the cases just cited.

## III.

The defendant's further contention is that the court erred in its action rejecting the defendant's offers to prove the general reputation of the plaintiff's witness, Dr. Davenport, for honesty and integrity in both his business and professional capacity was bad. It appears from the record that the court did, in the first instance,

reject offers of evidence of this kind, but later on the doors were thrown wide open and offers of the evidence theretofore rejected were received. Defendant was later on permitted to make the proof which the court had previously refused to receive, so that the ruling was not adhered to and so did no harm.

## IV.

The defendant complains that the court erred in modifying its instruction number seven which declared:

"The court instructs the jury that the testimony of experts is not given to you as statements of facts, but merely as opinions of the witnesses in the nature of advice and it should be received and considered with *great caution.* You are not bound to accept it as true, and in determining what weight, if any, you will give it, you should apply to it your own knowledge and judgment in connection with the testimony in regard to the facts in the case and you should accept only such parts as you may, from all the facts and circumstances in the case, deem reasonable and trustworthy. You are at liberty to reject all of such testimony if in your judgment it is unreasonable or unworthy of belief."

The court eliminated therefrom the words *great caution* and substituted in their stead the words, *"other evidence in the case."* So that in its modified form it told the jury in effect that the opinions of the expert witnesses should be received *with the other evidence in the case.* That part of the instruction succeeding the substituted words is cautionary and we can not see that the force and effect of the instruction as originally requested was altered by the modification. The propriety of such an instruction may be well questioned. In some jurisdictions a similar one has been approved (Haight v. Vallet, 89 Cal. 245; Buxley v. Buxton, 92 N. C. 479), but the weight of authority is to the effect that such an instruction is erroneous and should not be given. Wes-

ton v. Brown, 30 Neb. 609; Railroad v. Thiel, 32 Kan. 255; People v. Seaman, 107 Mich. 348; Kankanker v. Horan, 23 Ill. App. 259; Louisville v. Whitehead, 71 Miss. 451.

The competency of an expert witness is a question for the court, and it is the exclusive province of the jury to determine the credibility and weight of such evidence which it should consider in connection with all the *other evidence in the case.* Epps v. State, 102 Ind. 539; Gentry v. State, 66 Ind. 107; Alabama v. Hill, 93 Ala. 514; Kilpatrick v. Haley, 6 Col. App. 407. In this State it has been declared that it is a question for the court to determine whether a witness offered as an expert possesses the proper qualification, but "the value of the evidence which the witness may give is a question for the jury." Thompson v. Ish, 99 Mo. 179; Hampton v. Massey, 53 Mo. App. 501.

It results that if the instruction as requested had been refused altogether that the action of the court could have hardly been condemned for error, and if it was proper at all we can not see that the modification was harmful.

## V.

The plaintiff's third instruction in substance told the jury that if the defendant's foreman ordered plaintiff to stoop or sit down in the track and hold the rails apart with his hands and in that way assist in putting the rail on the angle-bar; and that obedience to that order put plaintiff in a dangerous place to work, and that without contributory negligence or assumption of the risk, as defined in other instructions, he was injured, then he was entitled to recover. And his fourth further told the jury that if the foreman negligently struck him—plaintiff—on the hand with the maul and without contributory negligence or assumption of the risk as defined in other instructions, he was entitled to recover.

Buckalew v. Railroad.

It is objected by the defendant that the evidence was insufficient to authorize the giving of these instructions. This objection is disposed of by what has already been said in respect to the action of the court in denying the demurrer to the evidence, and therefore need not be further noticed here. And the same remark is applicable to defendant's objection to plaintiff's first and second.

## VI.

The defendant further objects that the plaintiff's instruction number six, defining the rule as to the assumption of the risk, is erroneous in expression; but a reference to Thompson v. Railroad, 86 Mo. l. c. 147, et seq., and the numerous cases there cited will show that this is not so.

## VII.

It appears that plaintiff in the preparation of his instructions, for convenience, noted in pencil at the end of each the number of the volume and page of the statute or report supposed by him to authorize the giving of such instructions. It does not clearly appear that the defendant specifically objected to the giving of the instructions on this ground, but if it is to be inferred that it did we can not see that it was harmful, since it nowhere appears that the jury sent for or had before it any of the books referred to. It is undoubtedly the well-settled practice in this State not to permit juries, even in libel cases, to have access to law books, or to allow counsel to read them during the argument of the case to them. It is the province of the court to advise the jury by written instructions as to the law applicable to the case on trial. A different practice is not permissible.

The judgment will be affirmed. All concur.