FLORENCE BAKER, Appellant, v. ESTATE OF MARY CATHERINE BROWN,, DECEASED, Respondent, No. 45119—294 S. W. (2d) 22.

Division Two, September 10, 1956.
Motion for Rehearing or to Transfer to Banc Overruled, October 8, 1956.

1160

*C. M. Hulen, C. M. Hulen, Jr.,* and *Hess & Collins* for appellant.

*Raymond L. Falzone, W. F. Daniels* and *James Glenn* for respondent.

[24] STORCKMAN, J.—The plaintiff, Florence Baker, filed a claim in the Probate Court of Randolph County against the estate of Mary Catherine Brown, deceased, in the sum of $29,760 based on nursing services, washing and ironing and board and room furnished Mary Catherine Brown over a period of almost three years prior to her death. In the probate court the claimant recovered $16,500 and the estate appealed. On trial de novo in the Circuit Court of Macon County, where the case was sent on change of venue, the jury returned a verdict of $7500 in plaintiff's favor. Plaintiff's motion for a new trial was overruled and she appealed. Plaintiff will sometimes be referred to as the claimant and the defendant as the estate.

Since the plaintiff sued for $29,760 and recovered $7500 and plaintiff's motion for a new trial alleging inadequacy of the jury's verdict was denied, the supreme court has jurisdiction of plaintiff's appeal because the amount in dispute is the difference between the amount sued for and the recovery. Constitution of Missouri 1945, Article V, § 3; Hemminghaus v. Ferguson, 358 Mo. 476, 215 S.W.2d 481, 482 [1]; Conner v. Neiswender, 360 Mo. 1074, 232 S.W.2d 469, 470 [1].

The principal question on this appeal is whether the verdict of the jury is responsive to the evidence and instructions of the court and is so inadequate as to show a mistake of the jury or a disregard of the evidence and instructions.

Mary Catherine Brown and her sister, Amanda Brown, both spinsters, lived together on their farm about a mile or two southeast of Cairo in Randolph County until the death of Amanda. Mary Catherine, sometimes known as Catty, was then about 82 years of age and unable to take care of her needs and look after herself properly. Within two days after Amanda's funeral on November 11, 1950, Mary Catherine, at her request, moved to the home of her cousin, Florence Baker, the claimant herein, where she lived until she died. The date of her death is not shown but she was buried on November 3, 1953.

Florence Baker lived in the country about six miles east of Cairo. Her bachelor son, Harland Baker, 38 years old at the time of trial, lived with her. There were no toilet facilities in the Baker home and the evidence shows that Mary Catherine Brown "never set foot on the ground" from the time she went to live with the claimant. She was assigned a room in the house and was cared for from that time on by the claimant, Florence Baker, with the assistance of her son, Harland Baker.

Mary Catherine was feeble and needed assistance at all times while she lived at the claimant's home. During the early part of her stay she was able to come to the table but food had to be put on her plate. During the greater part of the time, however, she was confined to her bed and lost control of the functions of her bowels and kidneys. She

had to be kept in diapers and her condition necessitated washing of bedclothes and garments two or three times a week.

The claimant, Florence Baker, performed all services with respect to the care of Mary Catherine Brown with some assistance [25] from her son Harland. The claimant's evidence tended to prove that she was in attendance on her charge or subject to call 24 hours a day. It is not disputed that the claimant cared for Mary Catherine Brown in a commendable fashion. She kept the patient and her bed clean, washed and ironed the soiled clothing, prepared and served meals.

Mrs. Baker's claim against the estate consists of these items:

| | |
|---|---:|
| To 156 weeks of washing and ironing for the deceased, at $5.00 per week | $780.00 |
| To nursing deceased: | |
| 8 months (240 days) at $20.00 per day | 4,800.00 |
| 28 months (840 days) at $25.00 per day | 21,000.00 |
| To board furnished deceased: | |
| For 1,040 days, at $1.50 per day | 1,620.00 |
| To room furnished deceased: | |
| For 156 weeks, at $10.00 per week | 1,560.00 |

Defendant pleaded payment and its evidence tended to prove that claimant, Florence Baker, had entered into an express agreement with Mary Catherine Brown to furnish her a home and to take care of her for the sum of $100 a month and that current payments were made. Claimant denied the express agreement or that the money she received was in payment of her services. She based her claim on the reasonable value of her services. These issues were submitted to the jury.

Plaintiff's motion for new trial, not having been submitted to the trial court within 90 days after it was filed, was deemed over-ruled by operation of § 510.360, RSMo 1949, on the 90th day after its filing and this appeal was timely taken. The plaintiff contends in this situation that "it is the duty of this court to pass upon the weight of the evidence, and to pass upon the question of the adequacy of the verdict" because the trial court did not have "the opportunity" to do so. Appellant cites no authority for her contention and the question appears not to have been previously determined by this court.

Section 510.360 provides: "If the motion for new trial is not passed on within ninety days after the motion is filed, it is deemed denied for all purposes." This section of the Civil Code has been supplemented by Supreme Court Rule 3.24 dealing primarily with when a judgment becomes final for the purpose of ascertaining the time within which an appeal must be taken. The purpose of fixing a limited period for acting upon motions for new trial was to speed up litigation by eliminating unreasonable delay in the trial court after judgment. Kattering v. Franz, 360 Mo. 854, 231 S.W.2d 148, 149.

The question presented by appellant's contention is whether a different method or scope of appellate review pertains where a motion for new trial is deemed denied by operation of the statute than results where the motion is submitted to the trial court and overruled in the conventional manner. In determining the meaning and application of the provisions of the statute to the question presented, the court should ascertain the legislative intent from the words used if that is possible, and in so doing give to such words their plain and ordinary meaning so as to promote the object and manifest purpose of the statute. A. P. Green Fire Brick Co. v. Missouri State Tax Commission, Mo., 277 S.W.2d 544, 545 [3].

The statute says that the motion for new trial is denied "for all purposes." The word "all" is sometimes said to be the most comprehensive in the English language; it denotes the "whole number of," "each" and "every." State v. Hallenberger-Wagner Motor Co., 341 Mo. 771, 108 S.W.2d 398, 401. The use of these all-inclusive terms indicates an intent to accomplish by operation of law each and every purpose achieved by a formal order of the trial court, [26] timely made, overruling a motion for new trial. The act was not intended to change the method or scope of appellate review.

"The purpose of a motion for new trial is to call the trial court's attention to the alleged erroneous rulings upon which the movant relies, and thus give the court an opportunity to correct its own errors, if any." Banner Iron Works v. Ray R. Rosemond Co., Mo., 107 S.W.2d 1068, 1070 [4]. The statute does not deny the trial court the *opportunity* to pass upon the motion for new trial; it only limits the time in which it may be done. In fact, § 510.370 expressly provides that the court, within 30 days after judgment, may of its own initiative order a new trial and, of course, the trial court may, within the 90-day period, set a hearing on the motion and pass on the motion personally. When a motion for new trial is denied by operation of the statute it must be presumed that the trial court and counsel knew and intended the consequences of their failure to act.

We must consider the questions raised on this appeal as if the motion for new trial had been duly submitted and a formal order had been entered by the trial court overruling the motion.

█ Plaintiff's principal complaint, in effect, is that the verdict is against the weight of the evidence as to damages since an assignment in a motion for new trial that the verdict is inadequate goes to the weight of the evidence. Roush v. Alkire Truck Lines, Mo., 245 S.W.2d 8, 10 [1]; O'Shea v. Pattison-McGrath Dental Supplies, 352 Mo. 855, 180 S.W.2d 19, 23 [12]; King v. Kansas City Life Ins. Co., 350 Mo. 75, 164 S.W.2d 458, 464, [7].

In reviewing the ruling in the trial court denying plaintiff's motion for new trial on the ground of inadequacy of the verdict, the appellate court will not ordinarily undertake to weigh the evidence on the

issue of plaintiff's damages but will examine the record to determine whether there is substantial evidence to support the amount of damages awarded by the verdict. Steuernagel v. St. Louis Public Service Co.,.361 Mo. 1066, 238 S.W.2d 426, 431 [12]; Murphy v. Kroger Grocery & Baking Co., 350 Mo. 1186, 171 S.W.2d 610, 613 [8, 9].

Upon appeal from the overruling of plaintiff's motion for new trial on the ground that the verdict of the jury was wholly inadequate, the appellate court will consider the evidence and all inferences therefrom most favorably to the verdict which the trial court let stand. Combs v. Combs, Mo., 284 S.W.2d 423, 426 [8]; Hoffman v. St. Louis Public Service Co., Mo., 255 S.W.2d 736, 744 [17]; Henderson v. Dolas, Mo., 217 S.W.2d 554, 557 [8].

 Plaintiff, on the issue of damages, testified that the rental value of the room occupied by Mary Catherine Brown was $10 per week, the reasonable value of her washing and ironing services was $5 per week and her nursing services were reasonably worth $25 per day. There was no evidence as to the reasonable value of the patient's board. Other evidence in plaintiff's case as to the value of nursing services was: Mrs. Thomas Bragg, $25 to $30 per day; Sadie Briscoe, $30 per day; Mrs. Evelyn Bartlett and Mrs. Ethel Rice, $24 per day.

For the defendant, Dr. E. T. Whittaker, proprietor of a hospital in Moberly, testified a reasonable charge for caring for a woman in Mary Catherine Brown's condition would be approximately $200 per month including board, and that the beginning pay for a practical nurse is "one hundred dollars a month, and one thirty-five." Mrs. Evelyn Shepard, operator of a nursing home in Moberly, testified the usual charge for taking care of an elderly woman in Mary Catherine Brown's condition in a nursing home, including constant nursing, board, washing and ironing, would be $100 per month.

Oscar Brown, administrator of the estate and a brother of Mary Catherine, testified [27] that he was present at a conversation between the plaintiff and Mary Catherine Brown wherein the plaintiff agreed to take care of Catty for $100 per month and that the plaintiff told him later that Catty was paying her by means of checks.

The law implies a promise to pay the reasonable value of the services rendered when the amount of compensation is not stipulated. Emerson v. Treadway, Mo.App., 270 S.W.2d 614, 624 [27]; Muench v. South Side National Bank, Mo., 251 S.W.2d 1, 4 [1]. This is the quantum meruit doctrine upon which plaintiff submitted her claim to the jury. The reasonable value of these services would be the price usually and customarily paid for such services or like services at the time and in the locality where the services were rendered. Wagoner Undertaking Co. v. Jones, 134 Mo.App. 101, 114 S.W. 1049, 1051; Gray v. Cheatham, Tex.Civ.App., 52 S.W.2d 762, 764; 58 Am.Jur., Work & Labor, § 10, p. 518; 71 C.J., Work & Labor, § 135, p. 162.

■ The question of the qualifications of the witnesses who testified as to the value of the services was for the court and the weight of such evidence was for the jury. Kimpton v. Spellman, 351 Mo. 674, 173 S.W.2d 886, 892 [11]. Since no attack is made upon the competency of the witnesses, the jury had the right to consider all evidence that tended to throw light upon the reasonable value of plaintiff's services.

If the jury believes that the opinions of witnesses as to the value of personal services are unreasonable, it may disregard such evidence. Hull v. City of St. Louis, 138 Mo. 618, 40 S.W. 89; Buckalew v. Railway, 107 Mo.App. 575, 81 S.W. 1176; Norton v. Lynds, Mo.App., 24 S.W.2d 183, 186 [9]. This is in keeping with the general rule that a jury may believe all of the testimony of any witness or none of it, or may accept it in part or reject it in part, just as it finds the same to be true or false when considered in relation to the other testimony and the facts and circumstances of the case. Hutchison v. Thompson, Mo., 175 S.W.2d 903, 911 [9, 10]; Williams v. Ricklemann, Mo., 292 S.W.2d 276; Combs v. Combs, Mo., 284 S.W.2d 423, 426 [6].

■ A verdict may be responsive to the issue of damages although it does not find an amount precisely in accordance with the claim of either of the parties. Wilson v. Buchanan County, 318 Mo. 64, 298 S.W. 842, 848 [8]; Salmons v. Dun & Bradstreet, 349 Mo. 498, 162 S.W.2d 245, 252 [11]; Commercial National Bank v. White, Mo., 254 S.W.2d 605, 609 [4]; Peppas v. H. Ehrlich & Sons Mfg. Co., 228 Mo.App. 556, 71 S.W.2d 821, 824 [4].

It may be readily demonstrated that the finding of the jury is within the range of the evidence as to reasonable value. Plaintiff's contention that there is no dispute about $3900 being a reasonable charge for room and board, washing and ironing, overlooks material evidence. Mrs. Shepard testified that the usual and customary charge for taking care of an elderly woman in Mary Catherine Brown's condition in a nursing home, including the rendering of all the services in question, was $100 per month. Dr. Whittaker testified that the reasonable charge for all these services would be approximately $200 per month. This evidence throws light on the reasonable value of the services and could be considered by the jury. Giving effect to the evidence most favorable to the verdict, the jury could return a verdict on Mrs. Shepard's testimony of $3600 and on Dr. Whittaker's testimony the award would be $7200. This does not take into consideration any question of payment on account, which issue was submitted. An award in excess of the minimum which the jury could have found, though less than the value claimed by plaintiff, would not constitute error of which plaintiff could complain. The error, if any, would [28] be in plaintiff's favor and not to her prejudice. We cannot say that the jury was mistaken or disregarded the law and the evidence in returning a verdict for $7500, or that the verdict is not responsive on the

issue of damages. In Hull v. City of St. Louis, 138 Mo. 618, 40 S.W. 89, the plaintiff and eleven other witnesses estimated the reasonable value of plaintiff's services as an appraiser at $3250. Five defense witnesses testified the services were worth from $1000 to $1200. The jury's verdict was $1188 and on plaintiff's appeal the judgment was affirmed.

The appellant contends that this appeal is ruled by Busse v. White, before this court on three occasions and reported as follows: 302 Mo. 672, 259 S.W. 458; 274 S.W. 1046; and 287 S.W. 600. The Busse plaintiffs were awarded verdicts successively of $1,000, $2096.77 and $1,000 in an action for damages for fraudulent misrepresentations in the exchange of farm lands when all of the evidence in the case showed that plaintiffs' damages, if any, were in excess of $55,000. The court held that the verdict showed either a mistake by the jury or a disregard of the court's instruction with respect to damages. The Busse case and others cited by plaintiff are distinguished by the lack of substantial evidence to support the award under the facts of those particular cases.

■ There are two other allegations of error which plaintiff makes without citation of authority. One is that "The court erred in permitting defendant's counsel to inquire into the amount of Harland Baker's claim, and alluding to the same in his closing argument." On the direct examination, the witness Harland Baker testified that he had assisted his mother in caring for Mary Catherine Brown and that he had filed a claim against the decedent's estate for services rendered. On cross-examination defendant's counsel was permitted to bring out that the amount of the claim was $6280. The extent of cross-examination is largely within the discretion of the trial court and unless clearly abused the appellate court will not interfere. Wilcox v. Coons, 362 Mo. 381, 241 S.W.2d 907, 915 [20]. We find no error in the court's ruling, especially in view of plaintiff's introducing the subject matter on direct examination.

■ The plaintiff further charges error "in permitting defendant's counsel to argue and present to the jury, in his closing argument, checks which were identified but were not admitted in evidence in the case." The transcript fails to disclose that any checks were exhibited to the jury during argument. However, there is testimony by plaintiff and plaintiff's son that during the period in question a number of checks on Catty's bank account were cashed and that most of the checks were for $200. They further testified that the cash proceeds were placed in a bag to which both plaintiff and Catty had access. Plaintiff made no accounting for the expenditure of this money except the general assertion that it was all spent for Catty on items such as special food and clothes. After the death of Mary Catherine Brown none of this money was delivered to the administrator of her estate

or credited on plaintiff's account. This testimony was properly in evidence in support of defendant's plea of payment and there was no error in permitting defendant's counsel to refer to it in his argument. The judgment should be affirmed and it is so ordered. All concur.