Leo GLORE, Appellant,

v.

George BONE and Ralph Wallace, d/b/a
Pyramid Roofing Company,
Respondents.

No. 46607.

Supreme Court of Missouri,

Division No. 2.

June 8, 1959.

McClintock & Medley, Flat River, for appellant.

Roberts & Roberts, J. Richard Roberts, Farmington, for respondents.

STORCKMAN, Presiding Judge.

A jury found for the plaintiff and awarded him $2,000 as damages for personal injuries suffered as a result of a truck loaded with lumber backing into him. His motion for a new trial on the issue of damages only was overruled and he has appealed.

■■ Where a plaintiff appeals on the ground that his verdict and judgment is inadequate, the amount in dispute for purposes of appellate jurisdiction, absent exceptional circumstances, is the difference between the amount prayed for and the amount of the judgment in the trial court. Combs v. Combs, Mo., 284 S.W.2d 423, 424[1]; Vogrin v. Forum Cafeterias of America, Inc., Mo.App., 301 S.W.2d 406, 409[4], and Id., Mo., 308 S.W.2d 617. Since the amount prayed for was $50,000 and the recovery was $2,000, this court has jurisdiction.

On July 17, 1953, the defendant George Bone, an employee of the defendant Ralph Wallace, drove a truck loaded with lumber to the home of the plaintiff. It was dark when he arrived, sometime between 8:00 and 8:30 p.m. He was admitted to the barn lot and told to unload the lumber in a shed attached to the barn. The defendant Bone drove the truck a distance of between 25 to 30 feet beyond the open end of the shed and the plaintiff began taking down some boards which were wired or tied across the opening of the shed. The plaintiff had removed one board and was stooping to remove another when he became aware that the defendant Bone was backing the truck toward him. At about the instant that he raised up from his stooping position, the ends of the lumber projecting from the back of the truck struck him above the waist and in the region of the chest, pinning him against a post that supported a corner of the shed, causing injuries which are the subject of this action. Plaintiff's case was submitted on the failure of defendant Bone to ascertain plaintiff's presence behind the truck before driving it backward and against the plaintiff. Defendants submitted contributory negligence on the part of plaintiff in failing to see or hear the approaching truck.

The plaintiff's first contention is that the trial court erred in failing to grant plaintiff a new trial on the issue of damages because the award is inadequate and is against the weight of the evidence. Plaintiff was forty-nine years old at the time of his injury and fifty-three at the time of the trial. He had a fifth-grade education and did manual work. For five years before the accident he worked as an off-bearer at a saw mill, earning $6 per day and "worked steady." He could do any type of work in the saw mill, including lifting logs. He had never been in an accident and was in good health, except for a hernia which he described as about the size of his thumb and one of his doctor's compared to a hen's egg in size. There was evidence that the hernia was enlarged to about the size of a quart cup the morning after the accident.

Plaintiff's evidence further tended to prove that Dr. E. F. Cresswell, his family doctor, was called and attended him immediately after the accident. The doctor taped the plaintiff from the belt line to a point up under his arms. He was put to bed and was in extreme pain and in shock. Dr. Cresswell gave him a sedative and treated him for several days. Within the next few days the plaintiff was taken in an automobile to the Mineral Area Osteopathic Hospital where X-ray photographs were taken. He was confined to bed for a period of about two weeks after the accident. For two or three months after he got out of bed he could not do any work around the house. After that time he was able to milk cows and feed chickens but no other type of work. For two years after the accident he could not do any work other than for himself. He was not able to work at the saw mill because he could not bend over and did not have complete use of his left hand.

About two years after the accident plaintiff went to work at a grocery store at $5 per day and worked for one year until the

business was sold. At the time of the trial he was doing a little carpenter work that did not involve lifting or climbing on a roof. On these odd jobs, he earned about $6 per day and was able to work about two days a week. The extent to which the plaintiff received medical treatment is not clearly shown and is somewhat contradictory, but there is evidence tending to show he was treated until about October, 1953, and thereafter was not treated by any doctor. Dr. Cresswell did not release the plaintiff, he just quit going.

In addition to Dr. Cresswell, Dr. William A. Stevens of St. Louis, who examined the plaintiff on March 26, 1957, testified on his behalf. Plaintiff's medical evidence tended to prove that the plaintiff suffered fractures of six ribs on the left side and that his breast bone was fractured. He had pre-existing osteoarthritis of moderate severity of the dorsal spine, which was probably aggravated by the accident, but no increase in spurring or bone formation was shown by the X-ray pictures. The plaintiff had muscle spasm in his back six months following the accident. Motion of his neck and back was somewhat limited and he has a mild atrophy of the deltoid muscle of the left arm which was probably due to disuse. The comparatively smaller muscles in the upper arm on the left side could be explained by the fact that the plaintiff was right handed and could be attributed to atrophy by disuse. Dr. Stevens was of the opinion that plaintiff "is totally disabled and that condition is permanent." Dr. Cresswell testified that while the plaintiff could not do heavy manual work, he was not disabled at all from doing light work.

The only item of expense shown by plaintiff was $25 for X-ray photographs. Dr. Stevens testified plaintiff's hernia in its present condition could be repaired by an operation which would cost between $150 and $200. The operation would require hospital confinement for two weeks and he would not be able to do any active work for three months. While plaintiff's daily rate of pay as a saw mill worker was shown to be $6 per day, the evidence does not show how many days the saw mill operated or what plaintiff's earnings were over a period of time prior to the accident.

■ Where the trial court has overruled plaintiff's motion for a new trial predicated on inadequacy of the verdict, the appellate court will consider the evidence and inferences therefrom in the light most favorable to the verdict which the trial court let stand. Baker v. Brown's Estate, 365 Mo. 1159, 294 S.W.2d 22, 26[9], and cases therein cited; Hemminghaus v. Ferguson, 358 Mo. 476, 215 S.W.2d 481, 486[7].

Medical evidence on behalf of the defendants was given by Dr. G. L. Watkins who examined the plaintiff on two occasions; the first time on December 17, 1953, and the last time on May 10, 1957, which was about two and one-half months before the trial began on July 31, 1957. The substance of Dr. Watkins' findings was that the plaintiff suffered fractures of two ribs and a fracture of the sternum, or breast bone. These were the only fractures of which he could be sure and they were healing satisfactorily. The plaintiff had a large ingrown hernia which could have been aggravated as a result of the accident. However, if a man has a hernia which is not repaired, it has a tendency to get larger with or without an accident. At the time of the first examination, X-ray pictures revealed that the plaintiff had some arthritis of the spine which was not caused by the accident. An arthritic condition would probably be aggravated by the injury; however, a number of people in plaintiff's age group have arthritis to the same extent which is not the result of an accident. When the doctor made his first examination, the plaintiff did not complain of a pain in his neck, but he did so complain when examined in 1957. The doctor could not find any organic reason for the pain. There was a normal alignment of the spine, no

muscle spasm, and no atrophy of the muscles in the neck. At the time of the last examination, the plaintiff complained of his left arm, saying that there was pain in the left shoulder joint upon movement in any direction, but the doctor could find no reason for this pain. The doctor found that the muscles in the left arm were smaller than those on the right side, which could have been caused by lack of use. He testified that the plaintiff could elevate the left arm above his head and was able to lift it normally and in the same way as his right arm. The plaintiff also complained of a decrease of feeling in his left hand from the wrist down. The doctor described this as a glove-like type of anethesia which did not fit any particular nerve distribution and was not organically probable.

On the basis of his findings, Dr. Watkins was of the opinion that the plaintiff was able within six months after the accident to begin doing some work and to gradually rehabilitate himself. He would have to build up to hard work gradually because of his inactivity after the accident. Thus, it is apparent that there is a wide divergence of opinion with respect to the extent of plaintiff's disability. The testimony of one of plaintiff's medical experts that the plaintiff was totally and permanently disabled was contradicted not only by Dr. Watkins but also to some extent by plaintiff's own evidence that he had worked for himself during the first two years and had taken outside employment after that time. There was a substantial conflict in the evidence with respect to the extent of plaintiff's injuries and resulting disability.

■ The amount of the verdict as regards inadequacy has passed the scrutiny of the trial court. In these circumstances, the appellate court will not weigh the evidence but will limit its inquiry to the determination of whether there is substantial evidence to support the jury's verdict and whether the trial court abused its discretion in refusing to grant plaintiff a new trial. Waller v. Oliver, Mo., 296 S.W.2d 44, 49[7, 8].

■ The determination of the amount of the damages in a personal injury case is primarily for the jury and a verdict may be responsive on the issue of damages, although it does not find an amount precisely in accordance with the claim of either party. Baker v. Brown's Estate, 365 Mo. 1159, 294 S.W.2d 22, 27[14]; Wilhelm v. Kansas City Public Service Co., 358 Mo. 6, 212 S.W.2d 915, 918[4].

■ In fixing the amount of plaintiff's recovery, it was the jury's function not only to determine that plaintiff's hernia and arthritic condition were aggravated by the occurrence, but also the extent of aggravation as distinguished from the pre-existing condition and make its award accordingly. Thompson v. Healzer Cartage Co., Mo., 287 S.W.2d 791, 794[8].

■ It may well be that the jury would have been justified in returning a larger verdict as the plaintiff contends. On the other hand, the amount of the verdict is responsive to the evidence on the issue of damages; it is not grossly and shockingly inadequate so as to justify the grant of a new trial. Among the cases persuasive of this conclusion are Vogrin v. Forum Cafeterias of America, Mo., 308 S.W.2d 617; Waller v. Oliver, supra; Thompson v. Healzer Cartage Co., supra; Combs v. Combs, Mo., 284 S.W.2d 423; Conner v. Neiswender, 360 Mo. 1074, 232 S.W.2d 469; Hemminghaus v. Ferguson, supra; Wilhelm v. Kansas City Public Service Co., supra.

■ The other contention made on this appeal is that the court erred in overruling plaintiff's objection to a portion of defendants' closing argument and in failing to reprimand defendants' counsel in connection therewith. In order to give a better understanding of the question involved, we quote from the record:

"By Mr. Roberts: * * * Now, I'm sure it struck you ladies and gentlemen of the jury as it struck me that this accident happened on July 17th, 1953, and this matter is being tried on July 31st, 1957,—

"By Mr. Medley: Now, Your Honor, I am going to object to that argument and I'm going to ask that counsel be reprimanded for even making that type of argument. Counsel knows very well why this case hasn't been tried before. Mr. Glore hired a lawyer in St. Louis and he wouldn't do anything with this case for some reason and we don't know what that reason is.

"By Mr. Roberts: I made a comment on a fact, Your Honor, of the dates.

"By the Court: Well, overruled.

"By Mr. Roberts: Did you make a ruling, Your Honor?

"By the Court: Overruled.

"By Mr. Medley: Counsel knows very well that's what the reason is too, Your Honor.

"By Mr. Roberts: I'm sorry, I didn't hear it.

"By Mr. Medley: It's highly improper and it's an attempt to mislead this jury into thinking something counsel knows is not true.

"By the Court: Well, go ahead with your argument.

"By Mr. Roberts: That's a gap, ladies and gentlemen, of a little over four years. Now, there are a good many things in this, little things that by themselves don't point to anything specific but sometimes the little things, the unimportant things serve to point out what's really going on. You got a four year gap; that's one thing. * * *."

It is quite apparent that the plaintiff did not rely upon the court entirely for redress but, resorting to self-help, got in some licks of his own not based on anything we can find in the record. But regardless of this and other reasons that might be noted, it has not been demonstrated that the argument was improper and that the court abused its discretion in overruling the objection. The time factor upon which the argument was based was before the jury and counsel is allowed a wide latitude in discussing the facts and arguing inferences from the evidence even though the inferences drawn are illogical or erroneous. Eickmann v. St. Louis Public Service Co., Mo., 323 S.W.2d 802; Keehn v. D. R. F. Realty & Investment Co., 328 Mo. 1031, 43 S.W.2d 416; De Winter v. Lashley, Mo.App., 274 S.W. 2d 40.

We find no merit in the errors assigned and the judgment is affirmed.

All concur.