STATE of Missouri, ex rel., DIVISION OF FAMILY SERVICES, Assignee, and Division of Family Services, ex rel., Christopher Lee Reed, by Kimberly L. Reed, next friend, and Kimberly L. Reed, individually, Plaintiffs–Appellants,

v.

Robert Ray DUNCAN, Defendant–Respondent.

No. 16207.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 9, 1990.

Curtis G. Hanrahan, Jefferson City, for appellant.

Mary L. Dilks, L. Joe Scott & Daniel T. Moore, Poplar Bluff, for respondent.

FLANIGAN, Presiding Judge.

This is an action under the Uniform Parentage Act, §§ 210.817 to 210.852 RSMo (L.1987, SB 328), to determine the existence of the father and child relationship between Robert Ray Duncan, defendant in the trial court and respondent here, and Christopher Lee Reed, who was born August 26, 1986. Plaintiffs in the action, who are appellants here, are the Division of Family Services, Kimberly L. Reed (the mother), and Christopher Lee Reed. The jury returned a nine-person verdict in favor of the defendant. Plaintiffs appeal.

458

Plaintiffs' first point is that the trial court erred in overruling their objections to certain statements made by defendant's counsel during her opening statement and during her closing argument. The challenged statements will be considered in light of the events leading up to the lawsuit and developments at the trial. It will be noted that the challenged statements dealt mainly with topics which had been previously injected by plaintiffs' counsel or the trial court.

The mother testified that she and defendant had sexual intercourse on a single occasion in November or December 1985. She testified that she had no sexual relations with any other man during the probable period of conception. She testified that on September 2, 1986, she executed an assignment of her "support rights" to the Missouri Division of Family Services and in that document named defendant as the father of the child.

The action was filed on December 21, 1987, and tried in October 1988. By court order, the mother, the child, and defendant submitted to blood tests. On the basis of the tests an expert witness testified, on behalf of plaintiffs, that the probability of defendant's paternity of the child was 99.95%. The witness said, "In other words, Mr. Duncan is 2,176 times more likely than another white man to be able to produce a sperm which could produce this child."

Testifying in his own behalf, defendant told the jury that he was married and had been for six years, that he had a five-year-old son, that he and his wife were separated during the fall of 1985, and that he spent some time that fall "in Farmington in a mental institution, for deep depression." Defendant admitted that he knew Kimberly. Asked by his own counsel if he recalled ever having sexual relations with Kimberly, his response was, "As far as the act of having 'em, no, I do not recall." On cross-examination by the prosecutor, who represented the plaintiffs in this proceeding, defendant said he could not deny Kimberly's allegation that she had intercourse with him. Defendant also testified that in 1987 he received a call from a person with the Division of Family Services and that he admitted, in that conversation, that he had had intercourse with Kimberly.

During voir dire the trial court informed the veniremen that the petition was in three counts, that Count I was a "paternity suit" in which the plaintiffs claimed that defendant was the father of the child, that Count II was a claim by the mother for child support, and that Count III was a claim by the state for reimbursement for monies it has paid for the support of the child. The court also told the veniremen that the only count they would decide was Count I.

During voir dire examination the prosecutor asked one venireman if he "had trouble with the philosophy of making the father pay, rather than the Division of Family Services or the taxpayer." In his opening statement the prosecutor told the jury that on September 2, 1986, Kimberly had signed a document with the Division of Family Services, which named defendant as the father of the child and that, later, defendant was contacted by the Division of Family Services "about a private matter of paternity."

During the final argument of the prosecutor, which preceded the challenged argument of defense counsel, he told the jury that Kimberly "is receiving aid for families with dependent children. That's not what this case is all about." In the same argument, the prosecutor said:

"What this trial is all about is, is Bobby Duncan the daddy or not the daddy of this child and that's it. You know, it doesn't matter if he was drunk or on drugs. It doesn't matter if he didn't want the child. It doesn't matter if he can't afford the child. You know, none of these other things matter.

It doesn't matter that if a week later, she went to the Division of Family Services to get child support. That's a tragedy. That's a sad situation that we have.

. . . . .

But all the rest of the welfare stuff, don't get bogged down when you're doing your deliberations, as far as this evi-

dence is concerned because the judge has accepted this evidence in the case.

.    .    .    .    .

So I think that if you'll be sure that you stay on your job, and your job is not to judge the welfare system, or judge the State of Missouri or the Division of Family Service or anything else. The question is, is this the father of the child? Which you all have no doubt, in arriving at your verdict."

During the opening statement of defense counsel the following occurred:

"DEFENSE COUNSEL: Kimberly never told Robert. She didn't bother, while she was pregnant, to pick up a telephone and give him a call and say that she's carrying his child. She didn't inform him. She didn't tell him, after the child was born, 'This is your son.' She never told Robert at all. She never spoke to Robert.

We're here because she was collecting A.F.D.C. and had to put the name of a father down on the application. She never offered to let Robert visit the child.

THE PROSECUTOR: Objection. That's not at all relevant. There's no pleadings to that effect. Visitation can be handled at a later time.

THE COURT: I don't know if there's gonna be evidence to that, but this is a statement as to what the evidence will be. I'll permit it, if there's evidence to that."

Kimberly Reed, testifying on behalf of herself and her coplaintiffs, stated, on cross-examination by defense counsel, that she knew that "if this jury finds that [defendant] is the father, he would have rights to visit the child." There was no objection to the foregoing testimony.

The trial court is vested with a broad discretion with respect to the scope of counsel's opening statement. *Martin v. Sloan*, 377 S.W.2d 252, 260[9] (Mo.1964). This court holds that the trial court did not abuse its discretion in overruling the prosecutor's objection.

During the final argument of defense counsel the following occurred:

"DEFENSE COUNSEL: Kimberly Reed testified that she's never had a job. She is not trying to get a job. She's always been supported by someone else. She's in good health, she could work.

THE PROSECUTOR: Judge, I'm gonna have to object. That's not relevant to the issue of paternity.

THE COURT: The jury will remember what the testimony and evidence was and will be guided by that as being evidence, as opposed to what the attorneys say the evidence was. You may proceed.

*    *    *    *    *    *

DEFENSE COUNSEL: What did it do to Robert? Robert repaired his marriage and then what happened? He and his wife, he gets this lawsuit filed against him. And his wife is still with him. They are still raising their child.

THE PROSECUTOR: Judge, I'm gonna have to again object. All this happened after the conception and it's not relevant in any issue to be decided by this jury.

THE COURT: It'll be overruled.

*    *    *    *    *    *

DEFENSE COUNSEL: We've never heard Kimberly Reed say a word about anything that she wanted to do for her child. Kimberly Reed's testimony is, I want to collect welfare, I've got to put a name down. So I put a name down. That's what this is all about.

It's not about statistics, it's about people and unfortunately, it's about money. Because if you decide that Robert Duncan is the father of this child—

THE PROSECUTOR: I'm gonna again object. Money is not an issue to be decided by this jury and it's outside the decision of paternity.

THE COURT: Overruled."

The court did not make a ruling on the prosecutor's first objection and the prosecutor did not press for a ruling. The second objection was directed to argument which was consistent with the evidence. The third objection of the prosecutor was directed to argument which could reasonably be construed as a challenge to the

credibility of Kimberly. The trial court has broad discretion in ruling on the propriety of final argument. *State, Etc., v. Hensel Phelps Const. Co.,* 634 S.W.2d 168, 176[7] (Mo. banc 1982); *Lewis v. Bucyrus–Erie, Inc.,* 622 S.W.2d 920, 925[6] (Mo. banc 1981). This court holds that the trial court did not abuse its discretion in making the challenged rulings. Plaintiffs' first point has no merit.

■ Plaintiffs' second point is that the trial court erred in not granting a new trial because the verdict "was motivated by bias, prejudice, passion and sympathy on the part of the jury." In support of their second point, plaintiffs reargue the alleged impropriety of defense counsel's conduct discussed under plaintiffs' first point. Plaintiffs also cite cases where a defendant, on appeal, complained that a verdict in favor of plaintiff was excessive and motivated by bias and passion. Such cases are inapposite here.

An action filed under the Uniform Parentage Act is a civil act governed by the rules of civil procedure. § 210.839.1. Section 210.822 sets forth certain factual situations where a man is presumed to be the natural father of a child. None of those situations is present here. "Unless a presumption applies under section 210.822, the burden of proof as to all issues shall be preponderance of the evidence." § 210.839.4. Plaintiffs make no claim that the burden of proof did not rest upon them. At no stage of the trial did plaintiffs file a motion for a directed verdict.

Essentially plaintiffs contend that their evidence was such as to entitle them to judgment as a matter of law. Plaintiffs' failure to file a motion for a directed verdict constitutes a failure to preserve that contention for appellate review. *Crystal Tire Co. v. Home Service Oil Co.,* 525 S.W.2d 317, 320–321[1] (Mo. banc 1975). See also *Empiregas, Inc. of Branson v. Tri–Lakes Propane Co.,* 764 S.W.2d 156, 157 (Mo.App.1989); *Glasscock v. Miller,* 720 S.W.2d 771, 773[2, 3] (Mo.App.1986).

In *Parsons Construction Co. v. Missouri Public Serv. Co.,* 425 S.W.2d 166 (Mo.1968), a jury returned a verdict in favor of defendant. On appeal plaintiff claimed that the verdict was a result of passion and prejudice and that the trial court erred in failing to set it aside. Conceding that plaintiff had made a submissible case, the supreme court said, at 172:

"However, a jury may find *against* a party having the burden of proof, when the issue is for the jury, even though his proof consists of uncontradicted and unimpeached evidence.... In this case, defendant was not required to offer any evidence to support a verdict in its favor.... Plaintiff's contention that the verdict was the result of 'passion and prejudice' is based on the erroneous assumption that the verdict against the party having the burden of proof must have 'tangible support' in the evidence, and therefore is without merit." (Emphasis in original, citations omitted.)

Plaintiffs' second point has no merit.

■ Plaintiffs' third point is that the trial court erred in not granting a new trial because the verdict was "against the weight and sufficiency of the evidence." That portion of this point dealing with the weight of the evidence has no merit. "Upon appeals from judgments based upon a jury verdict, the appellate court is without authority to weigh the evidence." *Nelson v. Tayon,* 265 S.W.2d 409, 416[7] (Mo. 1954). "It was for the trial court alone to say whether the jury's verdict was against the weight of the evidence." *Nichols v. Bresnahan,* 357 Mo. 1126, 212 S.W.2d 570, 572 (1948). See also *Neavill v. Klemp,* 427 S.W.2d 446, 450 (Mo.1968).

■ That portion of plaintiffs' third point dealing with sufficiency of the evidence is also without merit. The burden of proof was on plaintiffs. "[I]n a case of this kind it is not necessary that there be any evidence to support a defendant's verdict." *Curtis v. Curtis,* 427 S.W.2d 410, 412[2] (Mo.1968).

Plaintiffs' fourth point reads: "This court should remand this case to the trial court for a hearing on the Motion for New Trial." This point is defective and preserves nothing for appellate review. It

fails to comply with Rule 84.04(d)[1] which requires a point to "state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous." With exceptions not applicable here, Rule 84.13(a) provides that "allegations of error not briefed or not properly briefed ... shall not be considered in any civil appeal."

Although plaintiffs filed a motion for new trial, apparently they did not request a hearing on the motion nor argue same. Since the motion was not passed on within 90 days after it was filed, it was denied for all purposes. Rule 78.06.

Plaintiffs' brief makes the statement, unsupported by reference to any portion of the record on appeal, that "The trial court never had the opportunity to rule on the merits of the motion." In *Baker v. Brown's Estate*, 365 Mo. 1159, 294 S.W.2d 22 (1956), the court dealt with the statutory counterpart of what is now Rule 78.06. Rejecting an argument similar to the one made here, the court said, 294 S.W.2d at 26:

> "When a motion for new trial is denied by operation of the statute it must be presumed that the trial court and counsel knew and intended the consequences of their failure to act.
>
> We must consider the questions raised on this appeal as if the motion for new trial had been duly submitted and a formal order had been entered by the trial court overruling the motion."

The judgment is affirmed.

HOGAN and MAUS, JJ., concur.

---

1. All references to rules are to Missouri Rules of Court, V.A.M.R.